**Karl B. TORVIK, Petitioner,**

v.

**POLICE AND FIREMEN'S RETIREMENT AND RELIEF BOARD, Respondent.**

**No. 13550.**

District of Columbia Court of Appeals.

Argued Feb. 28, 1979.

Decided Aug. 8, 1979.

Ken M. Gozur, Washington, D. C., for petitioner. Andrew C. Biscula, Washington, D. C., was on brief for petitioner.

Margaret L. Hines, Asst. Corp. Counsel, Washington, D. C., with whom Louis P.

Robbins, Acting Corp. Counsel and Richard W. Barton, Deputy Corp. Counsel, Washington, D. C., were on brief, for respondent.

Before GALLAGHER and FERREN, Associate Judges, and HOOD,* Chief Judge, Retired.

PER CURIAM:

Petitioner, a member of the Metropolitan Police Department since 1961, was injured while on duty in 1977, when his scooter collided with a motor vehicle. He was taken to a hospital and there it was ascertained that he had sustained, in addition to numerous contusions, a ruptured spleen and a fracture of the greater trochanter of the right femur. The spleen was removed by surgery and the fractured femur was treated without surgery or a cast.

Sometime after his release from the hospital, petitioner experienced difficulty with movement of his left forearm. X-rays revealed a previously unrecognized "comminuted minimally displaced fracture of the left ulna with significant fragment on the volar radial aspect."[1] This condition did not improve with treatment, and finally it was the opinion of one of the treating physicians that due to inner osseous membrane following the fracture of the left ulna, petitioner "cannot use his left hand efficiently as an officer."[2]

Petitioner applied for retirement on the ground that his injury in the performance of duty "disables him for the performance of duty." D.C.Code 1973, § 4–527(1). The Board of Police and Fire Surgeons recommended that petitioner "is permanently disabled in the performance of duty."

At the hearing before the Retirement Board, no one questioned the fact that petitioner had been injured in the line of duty. The questions were the extent of the injury and whether such injury rendered him incapable of performing the duties of the position to which he was last assigned.

Petitioner testified that his last assignment was Crossing Guard Coordinator, which required supervision of 29 crossing guards and the handling of complaints by or against them. He had held this position since 1972, and in the performance of his duties, he ordinarily rode a scooter. During his service as Crossing Guard Coordinator, he had made no arrests but had assisted other officers in handling "complaints, responding to robberies, or assaults."

Since the accident, petitioner testified that his left hand had become very weak, so weak that "at the supper table I don't even pass anything with my left hand," that he cannot turn a doorknob with his left hand, and that when he cuts grass he uses only one hand because "my left hand won't turn with the handle on the power mower."

In driving a scooter, petitioner testified that he "needed both hands," and since his injury he has not tried to drive a scooter. He feels he cannot reasonably perform the duties of his last assignment. He is especially concerned about his physical inability to subdue or arrest an unruly citizen or a suspected criminal. As a police officer, he is required even on offduty hours to carry a weapon and be prepared to render assistance should he see a crime in progress.

When asked if petitioner could do "light duty work" the testifying physician replied that in his opinion petitioner could do light duty work, but that the Metropolitan Police Force does not have any permanent light duty.

The Review Board found that petitioner had a limitation of his left arm, i. e., a limitation of supination and pronation as described by the Board of Surgeons report, and, by a vote of 4 to 3, concluded:

---

* Chief Judge Hood, Retired, participated in the oral argument of this case. He died on July 17, 1979 before the publication of the opinion.

1. When originally taken to the hospital, numerous X–rays were taken of various portions of his body, but none was taken of his left arm.

2. In more technical terms, "there was essentially no rotation, specifically no pronation and no supination secondary to intramembranous ossification between the radius ulna."

11. The Board carefully considered the limitations of the Officer and the duties of his last assignment and is of the view that while his disabilities might provide some limitations with regard to some police activities in other jobs and some adjustments in his present job; that nevertheless, he is capable of performing the job to which he was last assigned.

The Board then concluded as a matter of law:

Officer Karl B. Torvik was not, as of April 27, 1978, permanently disabled for useful and efficient service in the grade or class of position last occupied by him as a member of the Metropolitan Police Department of the District of Columbia.

The law provides for the retirement of a member of the Metropolitan Police Department who is injured in the performance of duty and such injury permanently "disables him for the performance of duty." D.C. Code 1973, § 4–527(1). "Disabled" means "disabled for useful and efficient service in the grade or class of position last occupied by the member." D.C.Code 1973, § 4–521(2). This court in *Jones v. Police & Firemen's Retirement & Relief Bd.*, D.C. App., 375 A.2d 1, 5–6 (1977), has held that in cases of this sort the duty of the Board is to determine if the petitioner "is still capable of handling the duties required by the kind of position to which she was regularly assigned prior to her injury," that Congress was most explicit in defining the word "disabled" in terms of the particular police job last held by the claimant, and that Congress has limited "disability pay to offers no longer capable of performing their old jobs."

The Retirement Board apparently attempted to bring this case within the rule just above stated, that is, that petitioner is "capable of performing the job to which he was last assigned;" but in order to do so the Board was compelled to recognize "the limitations" of petitioner and was forced to acknowledge that such limitations might require "some adjustments in his present job." What adjustments? If physical adjustments by petitioner, is he capable of making such adjustments? If adjustments

were to be made by the Police Department to the job, the question arises whether the Department may legally adjust a position to fit the physical limitations of the officer.

Whatever, and by whom, the adjustments were to be made, we think there is a clear recognition in the Board's findings that the petitioner, because of the limitations on the use of his left arm, is no longer capable of performing his old job. Consequently, the Board was in error in denying retirement to petitioner.

The ruling in *Jones, supra,* relied on here, may appear to be contrary to the slightly earlier ruling in *Coakley v. Police and Firemen's Ret. & R. Bd.,* D.C.App., 370 A.2d 1345 (1977), where it was held that petitioner, a fireman, although unable to perform firefighting duties, was not entitled to retirement because he was able to perform "a non-firefighting position" in the department. However, even if we were to rely on *Coakley* alone, our ruling here would be the same, as there was no evidence that there was any position in the police department that the petitioner was fully capable of performing.

The order of the Board is reversed and the cause remanded for further proceedings consistent with this opinion.

*Reversed and remanded.*