Eugene SEABOLT, Petitioner,

v.

**POLICE AND FIREMEN'S RETIRE-MENT AND RELIEF BOARD,**
Respondent.

No. 14181.

District of Columbia Court of Appeals.

Argued Nov. 13, 1979.

Decided March 25, 1980.

Rehearing En Banc Denied on
May 7, 1980.

Charles Krikawa, Washington, D. C., for petitioner; Robert Cadeaux, Washington, D. C., on brief.

Edward E. Schwab, Asst. Corp. Counsel, Washington, D. C., with whom Judith W. Rogers, Corp. Counsel, Washington, D. C., and Richard W. Barton, Deputy Corp. Counsel, Washington, D. C., were on brief, for respondent.

Before KELLY, FERREN and PRYOR, Associate Judges.

KELLY, Associate Judge:

Petitioner Eugene Seabolt seeks review of a Police and Firemen's Retirement and Relief Board decision denying him disability retirement. The Retirement Board found that petitioner was injured in the performance of duty under D.C.Code 1973, § 4–527, but concluded that he was not "disabled for useful and efficient [service] in the grade or class of position last occupied," under D.C. Code 1973, § 4–521(2). We affirm.

On appeal, petitioner claims that "[t]he threshold issue presented . . . is whether [he] is permanently disabled for the performance of his fire fighting duties." That contention is inaccurate for several reasons. First, this court may not indulge in a de novo factual determination of petitioner's disability. Instead, the standard of review is whether there is substantial evidence in the record to support the Retirement Board's unanimous finding that he was not disabled. D.C.Code 1978 Supp., § 1–1510(3)(E). *See* discussion and cases cited in *Citizens Association of Georgetown, Inc. v. District of Columbia Zoning Commission*, D.C.App., 402 A.2d 36, 41–42 (1979). Second, the permanence of petitioner's disability is not at issue here, since the Retirement Board did not articulate it as grounds for its finding of nondisability. Finally, as we hold here, disability from performing the "fire fighting duties" associated with petitioner's latest position with the depart-

ment does not, per se, constitute disability. Under D.C.Code 1973, § 4–521(2), petitioner must also be incapable of performing any "useful and efficient service" for the department in a position of the same "grade or class of position" as that he last occupied.

The record shows that petitioner, a sergeant in the District of Columbia Fire Department, was appointed in 1967. He injured his knee while playing a game at the firehouse basketball court on April 17, 1977. On April 22, surgery was performed to correct a torn meniscus and a rupture of the collateral ligaments in his knee.[1] The prognosis for recovery from such surgery is fairly good; the Police and Surgeons Board representative at the hearing, Dr. Albert E. Rolle, testified that, upon removal of the meniscus, "the individual can go back . . [and] can function at least reasonably well. Probably not 100 percent, but close enough that he can engage in any occupation."

After his leg cast was removed on June 7, petitioner began a program of physical therapy. He returned to work, on light duty status, on September 10, and performed this work without apparent difficulty until October 26, when he unexpectedly requested sick leave.[2] Petitioner claimed his request was the result of his physician, Dr. Robert E. Collins, telling him, earlier that day, that he "would not ever go back to fire fighting." There was also evidence that petitioner was scheduled to report that day to a new light duty assignment in the Apparatus Division, where a permanent, full-time sergeant's position had become vacant.

On October 30, Dr. Collins wrote the Police and Fire Clinic that, although petitioner "was handling light duty OK," he recommended petitioner be retired because "he won't be able to handle regular duty." The Board of Police and Fire Surgeons recommended that petitioner be found "permanently disabled for duty, not in the performance of duty."[3]

Both Dr. Collins and Dr. Rolle testified that petitioner was disabled from performing active fire fighting duties.[4] Dr. Collins testified that petitioner "does not have a competent left knee from the standpoint of what would be required in fire fighting duties," and that his knee might be taxed by carrying heavy equipment or climbing ladders.

Dr. Rolle, on the other hand, testified that petitioner's surgery "does not necessarily portend a disability," saying: "We have many active policemen who have had meniscectomies. We certainly see many athletes who have had meniscectomies try to bounce back and can certainly perform as though nothing had ever happened." He also testified that petitioner's post-operative chondromalacia,[5] although permanent, did not preclude "any type of muscle building rehabilitative exercise."[6]

1. An arthrotomy and a meniscectomy (removal of the meniscus cartilage) were performed.

2. Petitioner testified that he told his physician that he was doing "fine" on light duty and "figured . . . when [he] went back to the doctor [on October 26] . . . that [his doctor might] soon tell [him he] could go back to full duty."

3. The latter issue is not contested here since the Retirement Board found that the injury was incurred in the performance of duty, on the basis of evidence that the Fire Department had sanctioned the basketball games as on-duty recreational activity.

4. For purposes of this opinion only, we accept as true the petitioner's contention that he was incapable of active fire fighting.

5. Dr. Rolle defined chondromalacia as a "thinning of the cartilage." The term is used "to encompass degeneration and roughening as well."

6. On August 26, Dr. Collins said petitioner's "knee straightened completely" and he "could start bike riding and jogging." The implication in petitioner's brief, which concludes, ". . . the Board has forced genuinely disabled fire fighters, such as the petitioner, to either resign . . . or to attempt to continue to work over the objection of their clinic physicians, which poses and [sic] unwarranted danger to their health" is misleading. There is no evidence in the record to support petitioner's contention that his health would have been endangered by continuing light duty or any other work or activity, or that his physician ever objected to his continuing light duty work.

The only objective evidence of petitioner's disability (chondromalacia), other than the surgical scar, was noticeable crepitation (a phenomenon that Dr. Rolle said "does not necessarily produce . . . pain"), chronic swelling of "a very mild degree," and a slight reduction in the knee's range of flexion (petitioner's 105 degree motion was "almost normal—maybe a few degrees off . . . the normal knee should flex to about 115 degrees, and most of us don't use the full degree of flexion."). Dr. Rolle also testified that the medical record "doesn't indicate that an examination was performed at [the] time [petitioner was placed on sick leave] so that I would conclude it was because the patient said that he had pain. Subjective."

Petitioner testified that he had no trouble walking, driving, or mowing the lawn and said, "I have never taken anything for pain other than Aspirin or Bufferin." He also said he could physically handle the work he did on light duty status and could have continued performing those duties. Dr. Collins concurred, testifying that petitioner "absolutely" could do office work: "There are many physical tasks that he can perform. He will have pain in the knee, but he will have that whether he works or not."

There was, in short, ample evidence before the Board that, whatever disability petitioner suffered, it did not preclude light duty work. The question, then, is whether the ability to perform some limited duty position in the department prevents a disability finding under D.C.Code 1973, § 4-521(2).

Under *Coakley v. Police and Firemen's Retirement and Relief Board*, D.C.App., 370 A.2d 1345, 1349–50 (1977), the answer was clear. We held there, on similar facts to these, that petitioner's ability to perform a "non-fire fighting" position in the department precluded him from disability retirement, upholding the Retirement Board's interpretation of "grade or class of position" in § 4–521(2) as a "category defined by rank or salary, or both, e. g., Private . . . ." *Id.* at 1348. We gave great weight to the Board's rejection of petitioner's argument that the phrase referred to "an occupational category defined by duties and responsibilities, e. g., fire fighter . . . ," *id.*, stating that "where an administrative agency's construction . . . is reasonable and does not contravene the language or legislative history of the statute, it should be followed." *Id.* at 1349 (quoting *Harrison v. J. H. Marshall & Associates, Inc.*, D.C.App., 271 A.2d 404 (1970)). We also refused to adopt the gloss that federal courts have given identical language in the Federal Civil Service Retirement Act of 1926, on which our Police and Firemen's Retirement and Disability Act Amendments of 1957[7] were expressly modelled,[8] in the absence of any legislative history inconsistent with the Board's interpretation of the plain language in § 4–521(2). *Coakley v. Police and Firemen's Retirement and Relief Board, supra* at 1349.[9] We noted that public policy favored the Retirement Board's "[interpretation of] the retirement laws to discourage the retirement of District of Columbia per-

---

7. House Rule 6517, enacted as Pub.L.No.85–157, 71 Stat. 391, 85th Cong., 1st Sess. (codified at D.C.Code 1973, §§ 4–521 to –538).

8. Section 2 of the Police and Firemen's Retirement and Disability Act Amendments of 1957 reads:

> It is the intent of Congress in enacting the . . . Act Amendments of 1957 to give the members coming under such Act benefits substantially similar to benefits given by the Civil Service Retirement Act Amendments of 1956 to officers and employees covered by the Civil Service Retirement Act of May 29, 1930, as amended.

Section 401(1)(g) of the federal Act of 1956, Pub.L.No.854, 70 Stat. 744, is identical to D.C. Code 1973, § 4–521(2).

9. In the phrase *in the grade or class of position occupied by the employee*, the emphasized portion was added in the 1926 Amendments to the Civil Service Retirement Act of 1920, 44 Stat. 904, 907, ch. 801, § 6. The word "last" was inserted between "position" and "occupied" in the 1956 Amendments to the Act, 70 Stat. 744, § 401(1)(g). As we said in *Coakley v. Police and Firemen's Retirement and Relief Bd., supra* at 1349: "[T]he legislative history of the 1926 Act does not disclose the precise meaning that Congress attached to the phrase, 'in the grade or class of position.'"

sonnel who, while disabled from the performance of certain duties, can perform useful and efficient service in other capacities within their respective departments without suffering any diminution in rank or salary." *Id.*

Our opinion in *Jones v. Police and Firemen's Retirement and Relief Board*, D.C. App., 375 A.2d 1 (1977), decided three weeks after *Coakley*, reiterated the proposition that a petitioner who could still perform the duties of a position at the same grade or class as the one last occupied (in *Jones*, the petitioner remained capable of performing the very same position she last occupied) was not disabled under § 4–521(2). We also rejected Jones' reliance on the police department's "new and current policy terminating light-duty status availability to persons injured off-duty," *id.* at 4, and its rule that "every officer may be ordered to perform every kind of police task," *id.*, as conclusive proof that there was no longer any position in the department in which she could render useful and efficient service. We noted that, since the Board in *Jones* found she was capable of performing "the kind of tasks her last kind of job required, . . . it was unnecessary for the Board to address itself to the issue petitioner . . . raised on review [whether there were other jobs which petitioner could perform under the new regulations]. Obviously no regulations which are inconsistent with statutory objections can be accorded such effect." *Id.* at 6.

Petitioner here implicitly relies on a similar departmental policy (included in the record as a memorandum issued by Fire Chief Jefferson Lewis, entitled "Limited Duty Assignments in the Fire Department") to sustain his argument that incapacity from active fire fighting makes him disabled under § 4–521(2). The memorandum states that "[w]hen it is quite evident that one of

our men cannot be rehabilitated to full duty fire fighting, then we do a disservice to the taxpayer if we continue that man on our rolls," and that "[t]he Fire Department's official position is that this department cannot employ [such a person] on a permanent basis . . . ."

Noting, as did the *Jones* court, that the Act we are construing was enacted in 1957, "long before any of the changes in Departmental personnel policies to which petitioner has drawn our attention," *id.* at 6, we must endorse that court's conclusion that "It was plainly the premise of Congress in framing the disability provisions of this Act that not all police positions were interchangeable and that many officers were permanently assigned to . . . nonphysically taxing jobs . . . . Any disability plan which would grant pensions to persons for injuries not diminishing their ability to continue to do such work would . . . be a tremendous waste of public funds." [10] *Id.*

Thus, until our recent opinion in *Torvik v. Police and Firemen's Retirement and Relief Board*, D.C.App., 406 A.2d 1264 (1979), there was no question that a petitioner who could satisfactorily perform either his old job or another available light duty position of the same grade or class was not eligible for disability under § 4–521(2), notwithstanding departmental policy or regulations to the contrary.

Although the dicta in *Torvik*, amplifying the "old job" dicta in *Jones, supra* at 6, and *see* note 10 *supra*, stated that "Congress was most explicit in defining the words 'disabled' or 'disability' in terms of the particular police job last held by the claimant," its holding "would be the same," as the opinion makes clear, "even if [it] were to rely on *Coakley* alone, . . . as there was no evidence that there was any position in the police department that the petitioner

---

**10.** We do not, however, endorse the dictum in *Jones* that Congress intended "to limit disability pay to officers no longer capable of performing their old jobs." *Jones v. Police and Firemen's Retirement and Relief Bd., supra* at 6. That observation cannot be detached from the unusual factual context of *Jones*, particularly

since it conflicts with the clear language of § 4–521(2), which looks, not to the petitioner's ability to perform his or her particular "old job" but rather to the ability to perform jobs of the same "grade or class of position" as the "old job." *See* further discussion *infra*.

was fully capable of performing." *Torvik v. Police and Firemen's Retirement and Relief Board, supra* at 1266. Strictly speaking, Congress did define "disabled" in the terms of the last job held by the claimant. However, the last job was merely a starting point that referred the Board to larger category of jobs—those in the same "grade or class" as that job. A petitioner must then establish disability from performing any job in the category before qualifying for retirement pay under § 4–521(2).

We, therefore, read *Torvik* for the limited proposition that, given the record in that case (showing that petitioner's left hand had "essentially no rotation," *id.* at 1265 n. 2, and that it disabled him from performing any job in the department), there was not substantial evidence under D.C.Code 1973, § 1–1510(3)(E) to support the Retirement Board's finding of no disability. Thus, our opinions in *Jones* and *Coakley* remain undisturbed by *Torvik.*

A brief look at the clear language of § 4–521(2) should be sufficient to underscore the continued vitality of *Jones* and *Coakley* and rebut petitioner's argument that the Retirement Board must determine disability solely on the basis of whether a petitioner can still fulfill the particular position he happened to occupy at the time disease or injury struck. Had Congress intended this standard, it could easily have said so, and defined disability in § 4–521(2) as "disabled for . . . service . . . in the *last position occupied* by the member." It did not. Instead, it legislated that disability means "disabled for . . . service *in the grade or class of position last occupied* by the member." [11] D.C.Code 1973, § 4–521(2) (emphasis added).

**11.** We will not distort the grammatical syntax of this statute to reach an illogical result. Although the terms "position" and "last occupied" are juxtaposed in the statute, the latter does not modify the former (which is merely the object of the preposition "of"). Both adjectival terms, instead, modify "grade or class." Thus, we must turn to the category of jobs in petitioner's grade or class of position to discover whether petitioner is able to render "useful and efficient service" to the department. Such a category includes, but is not exhausted

Since there was substantial evidence in the record before the Retirement Board here that petitioner could still perform light duty in a position of the same grade or class as the position he last occupied in the department (sergeant), we must affirm the Retirement Board's conclusion that petitioner was not disabled under § 4–521(2), under the same standard we applied in *Coakley, supra.* [12]

*So ordered.*

FERREN, Associate Judge, dissenting:

I respectfully dissent because, on this record, binding precedent mandates reversal and remand to the Board.

### I.

This case concerns a firefighter who was injured in the line of duty and, as a result, was disabled from returning to a job that requires physical fitness to perform all assignable firefighting duties. I agree with my colleagues' conclusion that a firefighter in this situation is not entitled to disability retirement under D.C.Code 1973, § 4–521(2) if there is available a permanent, lighter-duty job (which he or she is physically capable of performing) in the "grade or class of position last occupied." *Id.* Disability to perform one's last job before injury is not enough, in itself, to establish a § 4–527 claim.

But that only begins the inquiry. If, for example, there exists a light-duty category of jobs in the same grade or class from which the employee came, but there is no opening at the time the employee becomes disabled from performing a heavy-duty job, must the fire department create an appro-

by, the very job petitioner last occupied. *See Jones v. Police and Firemen's Retirement and Relief Bd., supra.*

**12.** We do not discuss our unpublished memorandum opinion and judgment in *Tubbs v. Police and Firemen's Retirement and Relief Bd.* (No. 13425, Jan. 8, 1979), which is quoted at considerable length in respondent's brief, because it is devoid of precedential value. District of Columbia Court of Appeals Internal Operating Procedures (1978), Rule IX–C.

priate lighter-duty job for that employee? If not, does the employee's disability claim under § 4–527(1) simply depend on whether there happens to be a permanent light-duty opening at the time of injury? In any event, once an employee carries the burden of proving that he or she is disabled from performing the job held immediately prior to injury, who has the burden of coming forward with evidence as to the availability of an alternative, lighter-duty job in "the same grade or class of position last occupied"?

In the present case the fire department, its employees, the Police and Firemen's Retirement and Relief Board and this court should face up to these questions. In failing to do so, the court not only permits a possible injustice to petitioner but also adds to considerable confusion already evident in our case law.

## II.

In *Coakley v. Police and Firemen's Retirement and Relief Board*, D.C.App., 370 A.2d 1345 (1977), we sustained the Board's conclusion "that petitioner was not disabled for useful and efficient service in the grade or class of position he last occupied, namely, Private, Class I–A," because "he could perform non-firefighting duties at the same or a higher class of position with no reduction in pay." *Id.* at 1348. The availability of a nonfirefighting position apparently was not questioned, and, after the Board's decision, Coakley "was reassigned to, and commenced, a non-firefighting job in the department while retaining the same salary and grade level." *Id.* at 1346.

Three weeks later, in *Jones v. Police and Firemen's Retirement and Relief Board*, D.C.App., 375 A.2d 1 (1977), we affirmed denial of disability retirement because, although petitioner could not physically perform all regular police assignments in her grade and class of job, she was able to perform less onerous tasks as a Community Relations Officer, the job she occupied immediately prior to her alleged disability. The premises of the opinion, as in *Coakley, supra*, were that Congress assumed there would be a variety of jobs in each grade and class, some of which were not physically taxing, and that a lighter-duty position remained available to the petitioner. Accordingly, we concluded that the police department could not, in effect, manufacture disability claims by requiring every police officer to be physically capable of performing every kind of police duty.[1]

In *Coakley*, therefore, we affirmed denial of disability retirement because petitioner could perform an available lighter-duty job in the same grade or class. In *Jones*, on the other hand, we affirmed denial of disability because petitioner could perform the very same, lighter-duty job last occupied (although she could not perform all jobs in the same grade and class). Thus, both cases applied the criterion prescribed in § 4–521(2) (disabled for service in the "same grade or class of position last occupied"), and both validly presupposed the availability of permanent, lighter-duty jobs that petitioners were capable of performing.[2]

---

1. We said in *Jones, supra* at 6:

It was plainly the premise of Congress in framing the disability provisions of this [Police and Firemen's Retirement and Disability] Act that not all police positions were interchangeable and that many officers were permanently assigned to such non-physically taxing jobs as precinct clerical work, investigating and interviewing, or maintaining and analyzing arrest and fingerprint records. Any disability plan which would grant pensions to persons for injuries not diminishing their ability to continue to do such work would not only be totally unrelated to job qualifications but would be a tremendous waste of public funds.

2. The following statements in *Jones, supra*, have caused confusion in light of *Coakley, supra*:

The statute under which petitioner has invoked a disability claim does not require the Board to determine whether she is physically fit to perform every conceivable kind of police assignment, but merely whether she is still capable of handling the duties required by the kind of position to which she was regularly assigned prior to her injury. Congress was most explicit in defining the words 'disabled' or 'disability' in terms of the particular police job last held by the disability claimant. *See* D.C.Code 1973, § 4–521(2). [*Id.* at 5].

More recently, however, in *Torvik v. Police and Firemen's Retirement and Relief Board*, D.C.App., 406 A.2d 1264 (1979), we reversed the Board's denial of disability retirement for a policeman who was disabled from performing his most recent, pre-injury job (as a Crossing Guard Coordinator). Contrary to the situations in *Coakley* and *Jones*, "there was no evidence that there was any position in the police department that the petitioner was fully capable of performing." *Torvik, supra* at 1266. Therefore, although disability to perform the last pre-injury job will not necessarily entitle an employee to § 4–527 retirement, *Torvik* stands for the proposition that such retirement must be granted if the availability of a permanent, light-duty alternative is not established.

## III.

My problem with the majority opinion is its implicit assumptions that a light-duty job in the same grade or class is, in fact, available and that petitioner is medically fit to perform it. Neither assumption is warranted here. Although there was a fleeting reference at the hearing to an opening for a full-time sergeant in the Apparatus Division, the availability of the job was not confirmed, and, in any event, the duties of the job were not described at the hearing. Thus, the medical witnesses did not have an opportunity to testify as to petitioner's physical ability to handle that job or any other light-duty assignment assuredly available to him.[3] In fact, the record suggests, to the contrary, that a permanent light-duty alternative will not be made available. A memorandum of June 15, 1978 to the Board from the Fire Chief, Jefferson W. Lewis, states in part:

> There are certain, but limited, full duty assignments to which we can assign uniformed personnel who possess a suitable talent; but we do not, and cannot use those spots to shelter a medically unfit member. When it is quite evident that one of our men cannot be rehabilitated to full duty fire fighting, then we do a disservice to the taxpayer if we continue that man on our roles.
>
> \* \* \* \* \* \*
>
> The Fire Department's official position is that this department cannot employ anyone on a permanent basis who is medically prohibited from performing fire fighting duties.

Reversal, therefore, is clearly required under *Torvik, supra*. I do not understand how

---

\* \* \* \* \* \*

Congress . . . limit[ed] disability pay to officers no longer capable of performing their old jobs. [*Id.* at 6.]

In *Jones*, we were considering a claim by an employee who was physically capable of performing her last "regular duty" job (as a Community Relations Officer) prior to injury but who could not physically perform other "regular duty" jobs. Because police department rules required her physical readiness for all "regular duty," she claimed disability; she was unable to accept a shift, as needed, to other regular duty assignments. As indicated at note 1 *supra*, we concluded that Congress did not intend for the police department to impose a readiness requirement on all assignments, such that practically any disability would disqualify an employee from continued service. It was in this context that we said Congress intended no employee to receive § 4–527 disability retirement if he or she "is still capable of handling the duties required by the kind of position to which she was regularly assigned prior to her injury." *Id.* We were saying, in effect, that § 4-527 retirement was not available if one could continue to perform a relatively light-duty job in a grade or class that generally has more onerous physical requirements. We were not holding the converse: that one whose last police job was physically demanding is entitled to disability retirement if he or she is unable to perform that job, despite availability of a less onerous one in the same grade or class. That interpretation would be contrary to *Coakley, supra*, decided three weeks earlier.

3. At the Board's hearing, a doctor testified that petitioner could do office work. This testimony, however, was wholly unrelated to an available job. Petitioner actually did perform a light-duty job investigating fire department applicants for six and one-half weeks before requesting disability retirement. He testified that he could handle the job physically, although he sometimes experienced pain from weather conditions, standing too long, or climbing stairs. Apparently, there was not enough investigation work available to warrant petitioner's continued assignment to that job. *Compare Jones, supra* at 3–4 (petitioner had actually held a permanent light-duty job prior to injury and her physician's report indicated she was able to perform such desk work after the injury).

the majority can affirm denial of disability retirement in the absence of proof of a light-duty alternative.

The question then becomes, what should happen on remand? When we held in *Torvik, supra* at 1266, that "the Board was in error in denying retirement to petitioner" and "remanded for further proceedings consistent with this opinion," we did not deal with the question whether the Board must grant disability retirement or, instead, was free to take additional evidence to resolve whether a light-duty alternative was, in fact, available. We did not, however, foreclose such proceedings.[4] In any event, I do not believe we responsibly could reverse and remand this case—and perhaps should not have done so in *Torvik, supra*—without informing the Board that, once the petitioner has demonstrated a disability from performing his last job, the Board should obtain the evidence necessary to resolve whether one or more categories of permanent light-duty work exists in the same grade or class as petitioner's last job and, if so, whether an opening exists (or must be made available). As to these light-duty determinations, therefore, the government should bear the burden of refining the standard and coming forward with the evidence, failing which the petitioner's claim to § 4–527 disability retirement will be established. If the government, however, does demonstrate the existence and availability of a light-duty alternative, then the burden of coming forward with evidence of

disability to perform that less onerous job shifts back to the petitioner.[5]

My central concern, therefore, is this: an employee disabled from performing his or her last job should not have to risk getting caught in a policy dispute between the Fire Chief and the Board as to whether permanent light-duty is a realistic alternative to disability retirement. The Board has to determine how the fire department's willingness—or unwillingness—to make permanent light-duty work available is to be figured into these cases. Surely we cannot tolerate a situation in which a firefighter disabled from regular duty is denied disability pay on the assumption that light duty of the same grade or class is available, only to find that the department provides no such light-duty alternative. I am afraid, however, that this court's disposition leaves that possibility very much alive. Accordingly, I would reverse the denial of disability retirement and remand the case for thorough consideration of the implications generally, and as applied to this case, of the court's basic holding (with which I agree), apropos of *Coakley, supra* : that disability under D.C.Code 1973, § 4–521(2) is determined by reference to petitioner's ability to perform an *available* job in the "grade or class of position last occupied," not merely his last job as a regular firefighter.

---

4. Ordinarily, of course, after remand, the Board has the option to take additional testimony; usually this court's role after finding agency error is simply to remand for the agency to take whatever action it deems appropriate consistent with our ruling—and with applicable principles of finality. *See Jameson's Liquors, Inc. v. D. C. Alcoholic Beverage Control Bd.,* D.C.App., 384 A.2d 412, 420–21 (1978). In *Torvik,* however, by stressing language from *Jones, see* note 2 *supra,* to the effect that petitioner was entitled to disability retirement because he was not capable of performing his last job, *see Torvik, supra* at 1266, we may have implied that little, if any, room was left for further evidentiary proceedings. *Coakley, supra,* however, suggests the potential usefulness of additional proceedings to evaluate whether a

light-duty job alternative in the same grade or class was available.

5. Under D.C.Code 1978 Supp., § 1–1509(b), "the proponent of a rule or order shall have the burden of proof." Although the petitioner, therefore, has the ultimate burden to prove § 4–521(2) disability, this is not to say he or she must carry the burden of providing evidence of non-existence of a light-duty alternative. Consistent with § 1–1509(b), once a petitioner has demonstrated that he or she cannot physically perform the last job prior to injury, the burden of coming forward with evidence as to a light-duty alternative can be placed on the government, which is the party in a better position to marshal such evidence. The ultimate burden of persuasion, of course, remains on the petitioner.