**Janice A. RZEPECKI, Petitioner,**

v.

**POLICE AND FIREMEN'S RETIRE-MENT AND RELIEF BOARD, Respondent.**

**No. 80–499.**

District of Columbia Court of Appeals.

Submitted Jan. 22, 1981.

Decided April 21, 1981.

---

* Super.Ct.Civ.R. 24(a) also provides that an application seeking intervention as a matter of right be "timely" filed.

Francis C. O'Brien and William Clague, Bethesda, Md., were on briefs, for petitioner.

Judith W. Rogers, Corp. Counsel, David P. Sutton, Acting Deputy Corp. Counsel, Washington, D. C., when the brief was filed, and Philip T. Van Zile, III, Asst. Corp. Counsel, Grosse Point Farms, Mich., were on brief, for respondent.

Before KELLY, HARRIS and FERREN, Associate Judges.

PER CURIAM:

Petitioner challenges respondent's decision denying her request for disability

retirement under D.C.Code 1973, §§ 4–526, –527. Finding substantial evidence in the record to support respondent's determination, and no error of law having been committed, we affirm.

The Board found that petitioner, who presented evidence of a diagnosis of rheumatoid arthritis, suffered "some limiting disability," but concluded that she was not permanently disabled for useful and efficient service in the grade or class of position last occupied by her as a member of the United States Park Police.* See D.C.Code 1973, § 4–521(2). This conclusion is supported by the expert medical testimony before the Board and by substantial evidence in the record considered as a whole. See D.C.Code 1973, § 1–1510(3)(E). Accordingly, it is not our role to disturb the Board's decision.

*Affirmed.*

FERREN, Associate Judge, concurring:

The majority holds there is substantial evidence (based on expert medical testimony) to support the Board's conclusion that although petitioner suffered "some limiting disability," she is still able to perform "useful and efficient service in the grade or class of position last occupied by her as a member of the United States Park Police." My colleagues do not indicate what this evidence is. I write separately to point out that there is no record evidence of any available light duty job which petitioner is physically capable of performing. I must concur in the result, however, for under the rule this court has adopted, petitioner has failed to carry her burden of proving the negative: that there is no job in the Park Police force (in her grade or class) that she is physically capable of performing. *Whitehurst v. Police & Firemen's Retirement & Relief Board*, D.C.App., 418 A.2d 1028 (1980); *Seabolt v. Police & Firemen's*

---

* Petitioner previously had sustained an ankle injury and originally sought disability retirement on that basis, which was denied.

*Retirement & Relief Board*, D.C.App., 413 A.2d 908, 912 (1980).[1]

Petitioner suffers from rheumatoid arthritis of the hands and right foot. Her last two duty assignments were clerical positions. In the more recent job at the Training Section in Jones Point, Virginia, she was a typist in a cold, damp office. In the earlier assignment at the United States District Court in Hyattsville, Maryland, she contacted persons who had not paid their tickets, using the telephone and writing down information.

At the hearing on February 7, 1980, Dr. Paul Chang, a member of the Board of Police and Fire Surgeons, testified that petitioner "*could not even write and this is very disabling. And I don't think anybody in the Police Department or in the Park Police are unable to write, to use the hand.*" Dr. James Kehoe, a physician and witness for petitioner, testified:

I think under proper working conditions she could perform very light occupations. She could not do anything requiring any prolonged standing. She couldn't tolerate extreme changes in temperature. One of the things characteristic of this type of arthritis is easy fatigue-ability, so she would probably not have the stamina of a normal person to maintain a heavy work schedule.

\* \* \* \* \* \*

Given the proper working conditions, I think that she could perform light duty, but she would—the stress and tension that surrounded her employment in the last year or so, it would be difficult for me to see where you could. I'm not familiar with the organization, but it would appear that the positions that she has been put into have been ones in which she has continued to be in very stressful situations.

The Board issued written findings of facts, concluding as follows:

16. In a medical report, dated July 23, 1979, Dr. James A. Kehoe concludes: "It is my considered opinion that the total stress that this patient is under is working adversely in our attempts to control this very difficult and often times resistant disease. It is my further opinion that the patient is physically unfit for full duty as a member of the Park Police, but at the present time could be utilized in one of the many sedentary positions that I would presume that organization has in support of its field officers and personnel."

17. Dr. Kehoe said he told the Officer "that under no circumstances should she fire a hand gun." Tr. 93.

18. The Board finds that Officer Rzepecki's condition is manifested in a visible deformity at the base of her right thumb; that her duty assignments over the past approximately six years were consistent with the medical recommendations of her physicians.

19. Officer Rzepecki, when asked what was difficult about performing her job at the U. S. District Court in Hyattsville, Maryland, replied, "well it wasn't that. That particular job wasn't really that bad except when the weather got bad." Tr. 105.

20. The Board noted that Officer Janice Rzepecki entered the hearing room assisted by a walking cane, which she demonstrated its use during the course of the proceedings. However, she was observed to exit the hearing room without the use of the cane and without apparent difficulty.

21. The Board finds that the preponderance of medical evidence concludes there is some limiting disability. How-

1. Because petitioner has the burden of proving there are no available light-duty positions she can perform, it is hollow to say that the Board's decision is supported by substantial evidence. In reality, that only means there is substantial evidence supporting a conclusion that petition-

er is not totally disabled to perform any work. Given petitioner's burden of proof under *Seabolt, supra,* the Board will prevail even when there is *no evidence at all* regarding the availability of light-duty positions in the grade or class last occupied.

ever, there is insufficient evidence to conclude, with reasonable medical certainty, the limiting disability to be of such a permanently disabling nature to preclude Officer Janice A. Rzepecki from performing useful and efficient service for the U. S. Park Police.

The Board made these findings despite uncontradicted medical evidence that petitioner is barely able (physically) to write, cannot stand for a prolonged period, cannot tolerate extreme changes in temperature, is easily fatigued, and has recently been working in light-duty positions that are, nonetheless, "very stressful."

I do not question the possibility that there may be light duty, somewhere, that petitioner is physically capable of performing. But this record does not even offer a clue to what the Board or the Park Police may have in mind. This record reveals how wrong it is to place the burden on petitioner to prove there is no available light duty job she can perform. *See Seabolt, supra* at 912 (Ferren, J., dissenting). The Park Police is a nationwide organization. From the nature of the questioning it appears that at least one member of the Board believed

petitioner is not entitled to retirement because she could not prove there is no position she can perform with the Park Police elsewhere in the country.[2]

Given our disposition of this case, petitioner can respond to her situation by reporting daily to the Park Police, in good faith, ready to undertake available light duty jobs (which she is physically capable of performing) in the grade or class of position she last occupied. Presumably, either the Park Police must keep her employed or the Board eventually must conclude that no light duty alternative exists and allow her to retire on disability.

---

2. The following colloquy took place:

CHIEF BURKS: Have you requested a transfer to any other part of the United States?

OFF. RZEPECKI: No.

CHIEF BURKS: Park Police does have assignments throughout the entire United States.

OFF. RZEPECKI: Well, in New York and San Francisco, but the other positions throughout the United States were basically captain slots.

CHIEF BURKS: You mean they don't have patrol officers?

OFF. RZEPECKI: In New York and San Francisco.

CHIEF BURKS: Those are the only two places?

OFF. RZEPECKI: Yes. The other are mainly administrative.

CHIEF BURKS: Don't you have any facility in Georgia?

OFF. RZEPECKI: Training, yes.