Michael Emmett WELLS, Petitioner,

v.

**POLICE AND FIREFIGHTER'S RETIREMENT AND RELIEF BOARD, Respondent.**

No. 81–795.

District of Columbia Court of Appeals.

Argued En Banc Jan. 10, 1983.

Decided April 6, 1983.

Gerald C. Baker, Lanham, Md., for petitioner.

Robert E. Deso, with whom Robert E. Greenberg, Washington, D.C., was on the brief, for amicus curiae, Fraternal Order of Police, Metropolitan Police Dept. Labor Committee.

Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., and Judith W. Rogers, Corp. Counsel, and Diana M. Savit, Assistant Corp. Counsel, Washington, D.C., for respondent.

Before NEWMAN, Chief Judge, and KERN, NEBEKER, MACK, FERREN, PRYOR, BELSON and TERRY, Associate Judges, and KELLY,* Associate Judge, Retired.

KELLY, Associate Judge, Retired:

The division decision in this case, which we reaffirm, is reported as *Wells v. Police and Firemen's Retirement and Relief Board,* 449 A.2d 1079 (D.C.1982). It was vacated by order when rehearing en banc was granted. *Id.* at 1081–82. For reason of judicial economy, we lead off this en banc opinion by iterating, in large part, what we said in division.

On April 24, 1978, petitioner, an officer with the Metropolitan Police Department (hereinafter "the Department") was shot while on duty. The bullet that lodged in his chest was not removed and after the wound healed, petitioner was left with residual impairment in his nerve and muscle function.

Petitioner began a rehabilitation program in June 1978. The motion and strength in his left arm and hand improved, but he continued to experience pain and parathesias (a burning or crawling sensation of the skin) in his left arm. Surgery in March 1979 did not relieve this condition.

Dr. Alfred A. Pavot was Officer Wells' treating physician during his rehabilitation. On December 12, 1979, petitioner was presented before Dr. Pavot and the other members of the Pain Clinic at Greater Southeast Community Hospital. After the presentation, Dr. Pavot reported that petitioner had "achieved just about maximum recuperation from his injury," and that he would "be left with some permanent residuals of his left medial neuropathy which are manifesting themself [sic] with some impaired sensation in the left hand and some weakness in the muscles supplied by the left median nerve." Dr. Pavot also reported that petitioner "could return to limited duty on a full-time basis such as manning a desk in the police station and carrying out other sort of work which would not entail grappling with an assailant and similar types of activity which would necessitate normal grasp and sensory perception in both hands."

Petitioner was reexamined by specialists at the Pain Clinic in July 1980. The specialists determined that petitioner had "reached essentially a status quo position," and that he had difficulty flexing his left index finger against resistance which would prevent him from firing a revolver. They also found that although petitioner had a partial permanent disability of approximately 15% of the total body, he could return to light duty "without any significant difficulty."

In August 1980, petitioner was examined by the Board of Police and Fire Surgeons (hereinafter "Surgeons' Board"). It made findings similar to those of the Pain Clinic, but found a functional impairment of only 5%.

Petitioner filed a claim for disability retirement. At a hearing before the Board on November 6, 1980, Dr. Victor Esch, testifying for the Surgeons' Board, stated that petitioner could perform some limited duty work on a full-time basis. He recommended that petitioner not be assigned to a busy precinct where he might have to assist with prisoners, but concluded that petitioner could handle a desk job at Police Headquarters where he would have no contact with prisoners.

Petitioner also testified at the hearing, stating that, at times, he feels pain, a burning sensation and/or numbness in his left hand and arm. He also experiences pain in his rib cage where the bullet lodged. Petitioner stated that because of the numbness and pain in his arm and hand, he was not

* Judge Kelly was an Associate Judge of the court at the time of the en banc argument. Her status changed to Associate Judge, Retired, on March 31, 1983.

sure that he could safely handle any of the weapons used in the Department.

According to petitioner, on April 14, 1980, he was ordered to accept a limited duty status position for an indefinite period of time. He stated that he refused to accept the position for several reasons: (1) he did not believe he would be able to return to full duty, as required by the Department's limited duty policy;[1] (2) he believed his disability would negate his chances for promotion; and (3) he believed the limited duty position would have an adverse effect on his pension rights. Petitioner also testified that he would not return to work unless he received a written offer for a full-time limited duty position.

Petitioner has had an "absent without leave" status since he refused the limited duty position.

I

Petitioner contends that the Board's conclusions of fact are contrary to the weight of the evidence. Petitioner's evidence supports his claim that he could no longer perform his old job or any position entailing full police duties. The question before the Board, however, was whether he was "disabled for useful and efficient service in the grade or class of position last occupied" according to D.C.Code § 4–607(2) (1981). *Rzepecki v. Police and Firemen's Retirement and Relief Board*, 429 A.2d 1388 (D.C.1981); *Seabolt v. Police and Firemen's Retirement and Relief Board*, 413 A.2d 908 (D.C.1980). We have interpreted § 4–607(2)[2] to mean that an officer is "disabled" if he is unable to perform work in any position at the same salary level as he previously earned. *Coakley v. Police and Firemen's Retirement and Relief Board*, 370 A.2d 1345, 1348–50 (D.C.1977); *Seabolt v. Police and Firemen's Retirement and Relief Board, supra*, 413 A.2d at 910–12. We conclude from the record, as did the division, that the Board's finding that petitioner could perform useful and efficient service for the Department was supported by substantial evidence.

The en banc concern in this case is the continuing validity of our *Seabolt* decision. Contending, once again, that an irreconcilable conflict exists between *Seabolt, supra,* and *Torvik v. Police and Firemen's Retirement and Relief Board*, 406 A.2d 1264 (D.C. 1979), petitioner asks us to overrule *Seabolt* and hold that an officer who cannot perform full police duties is disabled for useful and efficient service as that phrase is used in D.C.Code § 4–607(2) (1981).

Petitioner cites *Torvik v. Police and Firemen's Retirement and Relief Board, supra,* and *Jones v. Police and Firemen's Retirement and Relief Board*, 375 A.2d 1 (D.C. 1977), in support of his position. In *Jones,* we referred to the petitioner's "old job" rather than a job of the same "grade or class of position" in our discussion of whether she was "disabled" under the statutory provision. These references may be explained, however, by the fact that in that case the petitioner was actually capable of performing the very same job she had last occupied.

In *Torvik,* we reversed the Board's finding that the petitioner was not eligible for retirement, stating that if a petitioner were able to perform his old job, he would not be eligible for disability. The "old job" dictum in *Jones* was repeated, but we noted that even if we relied on *Coakley,* alone, our decision would be the same because there was no evidence of any position in the Department that the petitioner could perform. *Torvik v. Police and Firemen's Retirement and Relief Board, supra,* 406 A.2d at 1266.

In *Seabolt,* we limited *Torvik* to its facts—the Board's finding of no disability was not supported by substantial evidence given petitioner's inability to perform any jobs in the Department. We also stressed the soundness of *Coakley's* interpretation of § 4–607(2): "A petitioner must . . . establish disability from performing any job in the category before qualifying for retirement . . . ." *Seabolt, supra,* 413 A.2d at 912.

We conclude en banc that the *Seabolt* decision is correct, and to the extent that

---

1. A Department policy requires an officer on limited duty to return to full duty after a specified period of time.

2. This section was previously codified as D.C. Code § 4–521(2) (1973).

any conflict with *Torvik* is not reconciled therein, *Torvik* is overruled.

## II

■ Petitioner claims that the Board erred in refusing to retire him because there was no evidence that a permanent, light-duty position was available for him. He complains that no testimony was presented at his hearing as to a specific duty he could perform and whether, if he were capable of performing, a specific position was available. Under *Seabolt,* the petitioner bears the burden of showing that there is no job available which he can perform in the grade or class of position he last occupied in the Department. *Seabolt, supra,* 413 A.2d at 912; *Woody v. Police and Firemen's Retirement and Relief Board,* 441 A.2d 987, 989 (D.C.1982). A petitioner will be able to show that no appropriate job is available if the Department fails to place and keep him employed in such a job. *Woody, supra,* 441 A.2d at 989.[3]

■ In the instant case, petitioner failed to establish his disability from performing any job in the "grade or class of position" he last occupied. Moreover, for reasons other than his inability to perform it,[4] he has refused a job which the Department offered him.

Our interpretation of the retirement statute allows for an appropriate degree of flexibility on the part of the Department and the Board, comports with due process, and extends the maximum benefits to the applicant. Talk of the creation of make-work positions, bolstered by no facts of record, is a disservice to those who attempt faithfully to discharge their responsibilities

according to law. If there are perceived inequities in the statute which require correction, the solution lies with the legislature.

*Affirmed.*

FERREN, Associate Judge, with whom TERRY, Associate Judge, joins, dissenting:

This case concerns the criteria for disability retirement from the Metropolitan Police Department when the claimant is permanently, but only partially, disabled. I agree with my colleagues in the majority that a police officer is not "disabled," within the meaning of D.C.Code § 4–607(2) (1981), unless "he is unable to perform work in any position at the same salary level as he previously earned." *Ante* at 138 (citations omitted).[1] An officer, therefore, will not be entitled to disability retirement merely by showing a physical inability to perform the job he or she held at the time of the injury (a job which typically would require fitness to perform all the taxing duties attributable to police work).

On the other hand, since no one disputes that petitioner has a permanent partial disability of five to fifteen percent of his body, and thus cannot perform his old job, we are squarely presented with the question whether there is a "useful and efficient" light-duty job, at the same salary, that petitioner is physically fit to perform. D.C. Code § 4–607(2) (1981); see note 1 *supra.* If there is not, he will be legally "disabled" and thus retirable as such. In short, the possibility of retirement for permanent partial disability is a function of two principal variables: (1) a permanent, partial physical impairment, and (2) the unavailability of a

---

**3.** The presumption that a suitable light duty position exists can be rebutted either at the original hearing, or later if no position that the injured officer can perform is available in the grade or class he last occupied. Indeed, we were assured at oral argument that if the unsuccessful applicant for disability retirement cannot perform the duties to which he is assigned, the Department will join him in requesting that the Board retire him from service.

**4.** In a suit in the United States District Court, the trial court was informed that if Officer Wells returned to work he would be placed in a

non-conflict office duty position in the Community Relations Division of the Metropolitan Police Department. His police powers would be revoked, *e.g.,* he would not carry a weapon. His eligibility for promotion and other benefits is, of course, beyond the scope of this opinion.

**1.** All parties agree that "disabled for useful and efficient service *in the grade or class of position last occupied,"* D.C.Code § 4–607(2) (1981) (emphasis added), means the physical inability to perform any job proffered to the officer for a salary at least equal to his or her salary at the time the disabling injury occurred.

suitable light-duty alternative to one's former job.

My colleagues sustain "the Board's finding that petitioner could perform useful and efficient service for the Department," *ante* at 138, by reference solely to the first variable. Although concededly there is only partial, not total, disability, and thus petitioner is not necessarily "disabled" under the statute, the majority upholds denial of retirement even though there is not a shred of record evidence that a "useful and efficient" light-duty job actually exists.[2] My colleagues do not require such evidence, however, since petitioner—despite the fact that he is not privy to the inner workings of the police department—did not carry the burden of proving a negative: that no such job exists.

Contrary to the majority, I believe that once permanent partial disability is proved, it is up to the government to sustain the burden of demonstrating that there actually is a "useful and efficient" light-duty job that petitioner may be capable of performing; otherwise, petitioner should be entitled to disability retirement. *Whitehurst v. Police and Firemen's Retirement and Relief Board,* 418 A.2d 1028, 1029 (D.C.1980) (Ferren, J., dissenting); *Seabolt v. Police and Firemen's Retirement and Relief Board,* 413 A.2d 908, 913, 915 (D.C.1980) (Ferren, J., dissenting).[3]

By placing on petitioner "the burden of showing that there is no job available which he can perform," *ante* at 139, my colleagues "say, in effect, that there is a presumption of available light-duty work which the claimant must rebut by a preponderance of the evidence . . . ." *Whitehurst, supra,* 418 A.2d at 1029 (Ferren, J., dissenting); *ante* at 139 n. 3. As a consequence, this en banc decision stands for the proposition that all the government has to do, in order to deny disability retirement, is to produce credible medical testimony tending to show that petitioner is not totally disabled to perform some kind of useful (though undefined) work. *Rzepecki v. Police and Firemen's Retirement and Relief Board,* 429 A.2d 1388, 1390 n. 1 (D.C.1981) (Ferren, J., concurring). Thus, the realities about what kinds of light-duty jobs are actually available may be altogether ignored, leaving it up to the petitioner (or the Metropolitan Police Department) to commence a second proceeding if, as it turns out, there is no "useful and efficient" light-duty service, at the previous salary level, that the petitioner is capable of performing. See *ante* at 139.

This approach not only is likely to waste administrative and judicial resources but also is an irrational allocation of the burdens of defining and verifying light-duty alternatives. *Seabolt, supra,* 413 A.2d at 915 n. 5 (Ferren, J., dissenting); see note 3 *supra.* Because "the facts are solely within the government's control," the majority imposes an "unfair if not impossible burden"

2. We may judicially note that on October 15, 1982, fifteen months after the Board's decision, the United States District Court found in an injunction action brought by petitioner Wells that the Metropolitan Police Department had offered Wells a "non-contact office duty position in the Community Relations Division," a position amounting to "clerical duties." *Wells v. District of Columbia,* CA 81–1606 (D.D.C. 1982). The court said it "can see no reason why plaintiff cannot report for the above duty." *Id.* Although my colleagues in the majority cite this decision, they do not rely on it for their basic analysis, *ante* at 139 n. 4, and it does not affect what the Board should have required the government to show here.

3. In my *Seabolt* dissent concerning an identical problem for a firefighter, I suggested the following approach:

[O]nce the petitioner has demonstrated a disability from performing his last job, the Board should obtain the evidence necessary to resolve whether one or more categories of permanent light-duty work exists in the same grade or class as petitioner's last job and, if so, whether an opening exists (or must be made available). As to these light-duty determinations, therefore, the government should bear the burden of refining the standard and coming forward with the evidence, failing which the petitioner's claim to [D.C. Code] § 4–527 [now § 4–616] disability retirement will be established. If the government, however, does demonstrate the existence and availability of a light-duty alternative, then the burden of coming forward with evidence of disability to perform that less onerous job shifts back to the petitioner. *Seabolt, supra,* 413 A.2d at 915 (Ferren, J., dissenting) (footnote omitted).

on a claimant. *Whitehurst, supra,* 418 A.2d at 1029 (Ferren, J., dissenting). Commonly, therefore, absent an ability to prove what the police department will do, a claimant must wait until he or she reports for work to find out whether the denial of disability retirement was valid or, in reality, was a sham.

What really is happening is this: under the majority opinion, a police officer who is found to have a permanent partial disability and is incapable of performing his or her old job—but is capable of undertaking light duty work of an unspecified kind—has the right to report to work every day, in good faith, ready to undertake available light duty jobs that he or she is physically capable of performing. As long as the officer performs a proffered job, the department will have to keep paying the officer at his or her old rate, without regard to whether the job is normally assignable to a police officer and compensable at that level. See *ante* at 139; *Woody v. Police and Firemen's Retirement and Relief Board,* 441 A.2d 987, 989 (D.C.1982); *Rzepecki, supra,* 429 A.2d at 1391 (Ferren, J., concurring). But suppose the officer disputes that he or she can perform the proffered job, or suppose the police department claims it does not have a light-duty job available (or does not want the officer, at his or her level of pay, to take a job that the department normally would fill more cheaply by hiring a lay person). In either case, as the majority concedes, *ante* at 139 n. 3, there will have to be another disability retirement proceeding, in order to determine once again—this time on the basis of facts—whether there is or is not "useful and efficient service," at the officer's last salary level, that he or she is physically capable of performing.

Whether the department eventually proffers a suitable light-duty job or not, the majority's approach, at best, defers conclusive resolution of the very issue this proceeding supposedly is to decide. At worst, it either will put a claimant, for whom there does not turn out to be a realistic light-duty alternative, in a Catch-22 situation, or will permit the department to make irrational and uneconomic personnel choices by using relatively well paid officers for light duty that others could perform at less cost.

Possibly, through the use of discovery, including subpoena power, a disability claimant can force the light-duty job issue, and carry the required burden of proof, at the initial Board hearing. But that is an expensive and unfair burden which the government itself, with all the information at hand, ought to assume.

Respectfully, therefore, I dissent. In remanding to the Board, however, I would include an instruction that petitioner's claim should be denied if, as it would appear, he more recently has declined a suitable light-duty job at the required salary level. See note 3 *supra.*