Ronald J. SZEGO, Petitioner,

v.

POLICE AND FIREFIGHTERS' RETIREMENT AND RELIEF BOARD, Respondent.

No. 86–824.

District of Columbia Court of Appeals.

Submitted June 22, 1987.

Decided July 27, 1987.

Karl E. Davis, Washington, D.C., was on brief, for petitioner.

James R. Murphy, Acting Corp. Counsel at the time the brief was filed, with whom Charles L. Reischel, Deputy Corp. Counsel, and Victor E. Long, Asst. Corp. Counsel, Washington, D.C., were on brief, for respondent.

Before PRYOR, Chief Judge, and MACK and BELSON, Associate Judges.

MACK, Associate Judge:

Petitioner is a special agent with the United States Secret Service. He seeks review of a decision and order of the Police and Firefighters' Retirement and Relief Board in which he was found not disabled for useful and efficient service in the grade or class of position last occupied by him as a member of the Secret Service.[1] Because the Board's decision is not supported by substantial evidence, we reverse.

Ronald J. Szego was appointed to the Secret Service on June 26, 1961. Having started from the very low ranks, he worked up to Supervisory Criminal Investigator in 1972. In 1982 he was selected to succeed the Special Agent in Charge of the Miami, Florida office of the Secret Service. On June 19, 1967, Szego and a fellow special agent were firing on the pistol range to qualify for the semi-annual marksmanship period. Toward the end of the session, one of the reloaded cartridges he was using exploded with a loud blast and something struck Szego's eye. He had immediate sharp pain and for several minutes his eye watered, forcing him to discontinue firing. He went back to his office and completed the forms to report the incident. Within a month he realized the vision in his right eye had become poor and blurred and he went immediately to see an ophthalmologist, who diagnosed a hole in the right eye retina with a gliosis and traction folds in the retina. The visual acuity in his right eye was 20/50 and in the left eye was 20/15. Additional examinations in 1967 and 1968 revealed ruptures in the area of the inner retina.

Szego's vision stabilized and remained fairly constant until December, 1984 and January and February, 1985, when it suddenly worsened. He could not qualify with a firearm on December 11, 1984, whereas he had always qualified previously; he was having difficulty driving; and he was having difficulty with depth perception, being unable to tell how far or close something was to him. In March 1985, he was told that sight in his right eye was 20/200 (best corrected), which is legally blind in the state of Florida. He was referred to an ophthalmologist, who found evidence of the traction scar of the right macular region secondary to old trauma and hemorrhage of the retina.

The Board does not question that the present deterioration in Szego's vision is due to the past injury, and that the past injury was sustained in the course of employment for the Secret Service. Rather, the Board's inquiry focused on whether the injury disqualified Szego for useful and efficient service in his present position.[2] The Board concluded that "although petitioner has a 100% loss of vision in his right eye it does not severely restrict his ability to see and perform the major duties and responsibilities of his position description," stating that "despite the use of only one eye, petitioner is nonetheless able to perform work in a satisfactory manner."[3]

In reviewing the findings of an agency of the District of Columbia, the District of

---

1. D.C.Code §§ 4–607(2), –615, –616 (1981).

2. Petitioner testified that the Secret Service has no partial or light duty.

3. The Board of Surgeons recommended to the Retirement and Relief Board that Szego is permanently disabled. Petitioner testified that the Secret Service became aware that he was legally blind in one eye in March 1985, and stated at the hearing that he no longer carried a gun. Mr. Szego elected to take optional retirement effective February 14, 1986.

Columbia Administrative Procedure Act provides that this court must hold unlawful and set aside any agency decision not based upon substantial evidence. D.C.Code § 1–1509(e) (1981). Therefore, the court must consider whether the agency findings are supported by reliable, probative, and substantial evidence in the record, and whether the conclusions reached by the agency flow rationally from these findings. *Scott v. Police and Firemen's Retirement and Relief Board,* 447 A.2d 447, 449 (D.C.1982). To determine whether there is substantial evidence, "[t]his court then must review the record 'as a whole' (citations omitted) 'to determine whether the agency could fairly and reasonably find the facts as it did,' and to assure that the Retirement Board's decision did not rely on unsupported findings." *Proulx v. Police and Firemen's Retirement and Relief Board,* 430 A.2d 34, 35 (D.C.1981).

■ Eligibility for disability retirement requires three showings: (1) disability (2) from useful and efficient service (3) in the grade or class of position last occupied. D.C.Code § 4–607(2) (1981). Implicit in those three requirements is a fourth: capacity to perform the work assigned given the nature of the injury or disability. *See Wells v. Police and Firefighter's Retirement and Relief Board,* 459 A.2d 136, 139 (D.C.1983) (en banc) (petitioner refused light duty position "for reasons other than his inability to perform it"); *Seabolt v. Police and Firemen's Retirement and Relief Board,* 413 A.2d 908, 910 (D.C.1980) (ample evidence demonstrated that petitioner could "physically handle the work he did on light duty status and could have continued performing those duties").

■ The Board's conclusion that Szego continues to be qualified to do his present job as Special Agent in Charge of the Miami office is unsupported by substantial evidence. The evidence is uncontradicted that the following physical standards and conditions are requirements of Szego's employment: he is required to maintain a high standard of physical condition; his uncorrected distant vision must test at least 20/40 and corrected distant vision at least 20/20 in each eye; normal depth perception and peripheral vision are required; he must be proficient in the use of various weapons utilized by the Secret Service;[4] he encounters hazards inherent to criminal law enforcement and protective duties; he performs protection related duties when Secret Service protectees are traveling within the geographic area of the field office's jurisdiction; he must possess the ability to cope with a great variety of emergencies and problems encountered; and he performs the supervisory and managerial duties of his office.

The Board's decision appears to turn on petitioner's ability to avoid mishap thus far; a sort of hopeful "so far, so good" rationale. The Board based its conclusion that Szego was not incapable of performing the position he presently occupies on findings that Szego has missed no days from work, has not complained to his superiors that he is unable to function satisfactorily, has not had any negative feedback about his performance and has not shot his weapon in the last year in an incident of arrest or defense. The Board found that while Szego's condition may present a potential problem at some later juncture, he has continued to perform the duties of his position description. It concluded, therefore, that he can continue to perform his assigned duties for the Secret Service and thus is not disabled for useful and efficient service with the agency.

That petitioner has thus far managed to avoid endangering himself and others due to his deteriorating eyesight is not a proper basis for decision. As petitioner's counsel at the hearing pointed out, in petitioner's

---

**4.** Szego is required by the Secret Service to qualify in marksmanship with a pistol, shotgun and Uzi machine gun four times a year. Prior to December 11, 1984, when he noticed a sudden loss of his vision, he never had any trouble qualifying and, since 1977, had fired qualifying scores of 255, 265, 290, 285, 275, 290, 270, etc., substantially in excess of the minimum qualifying score of 210 out of 300. On December 11, 1984 he failed to qualify for the first time with a score of 195. In February 1985 he fired 78, in May he fired 69 and 38, in July he fired 62 and in October 1985 he fired 85—all far below the minimum qualifying score.

line of work, physical readiness to handle a potential problem is essential:

He has to be physically fit so that when the situations arise, and hopefully they never arise, but when they arise that he can then not be impaired in his ability to react to those situations. ... Obviously people don't go around taking pot shots at VIP's, the president, vice president, every day that they're out. But as we all know it happens. And it's the ability of the agents to react as they did in President Reagan's case up at the Washington Hilton when it does happen that makes the difference.

Mr. Szego's Secret Service office in Miami has seventy-two personnel and is known as one of the most active in the country. Szego testified that his job takes him out on the street an average of two to three times a week arresting people and participating in arrests, covering undercover purchases of contraband, raiding counterfeit plants and performing protection assignments for foreign dignitaries, the President (once or twice a year) and the Vice President, who visits regularly (six or seven times in 1985 alone). Given that Mr. Szego has lost his central vision in one eye, has poor depth perception and peripheral vision and impaired ability to see at night,[5] the Board's conclusion that Mr. Szego is physically capable of performing useful and efficient service in the grade or class of position last occupied by him is not supported by the evidence.

*Reversed.*

---

**5.** There was also evidence that Szego's ability to do paper work may be compromised because of too much strain on one eye, possibly leading to decreased vision in his good eye.