Charles J. DiVINCENZO, Petitioner,

v.

DISTRICT OF COLUMBIA POLICE & FIREFIGHTERS RETIREMENT AND RELIEF BOARD, Respondent.

No. 91–AA–1248.

District of Columbia Court of Appeals.

Argued Dec. 18, 1992.

Decided Feb. 23, 1993.

---

Frederic W. Schwartz, Jr., with whom Robert Cadeaux, Washington, DC, was on the brief, for petitioner.

Phillip A. Lattimore, III, Asst. Corp. Counsel, with whom John Payton, Corp. Counsel, and Charles L. Reischel, Lutz Alexander Prager, and Susan S. McDonald, Asst. Corp. Counsel, Washington, DC, were on the brief, for respondent.

Before SCHWELB, KING, and SULLIVAN, Associate Judges.

SCHWELB, Associate Judge:

On September 26, 1991, following an evidentiary hearing, the Police and Firefighters Retirement and Relief Board (the Relief Board) found that Firefighter Charles J. DiVincenzo, who had been injured while on duty, was not totally disabled, and that he was not precluded from performing useful and efficient service by reason of injuries incurred while on duty. *See* D.C.Code §§ 4–607(2), 4–616 (1989). The Relief Board therefore held that DiVincenzo was not entitled to disability retirement or to the annuity which accompanies such retirement. Because the Relief Board failed to make adequate findings on the critical issue whether DiVincenzo had been offered a position in which he could do useful and productive work in spite of his condition, we vacate the decision and remand the case to the Board for further proceedings.

## I.

The historical facts are largely undisputed. On October 24, 1965, at the age of 22, DiVincenzo was appointed to the District of Columbia Fire Department and began his career as a firefighter. On April 5, 1968, during disturbances following the assassination of Dr. Martin Luther King, Jr., he was hit by a rock thrown by a rioter and suffered injury to his back. Over the next fifteen years, DiVincenzo reinjured his back on several occasions while on duty. In June 1982, while testing a hose, DiVincenzo experienced a sharp pain in his lower back and legs.

Claiming that he was unable to perform his regular duties, Firefighter DiVincenzo was placed on sick leave until March of 1983. At that time, he was released for limited duty and assigned to guard a firehouse. Unfortunately, the Relief Board made no findings as to what his responsibilities at the firehouse were. According to DiVincenzo, however, "they put me at a firehouse as a guard, walking up and down, opening up doors." After noting that the station house had a spiral stairway, DiVincenzo testified that

[t]hey gave me a job that I wasn't capable of doing. I wasn't capable of protecting the fire house, walking up and down the steps. Now, we're talking about a 16-hour—you know, from 4:00 o'clock on to 6:00 or 7:00 o'clock the next morning and at 24 Engine—You know how many times they run. Up and down the steps. That was one of the things the doctor told me, you know, walking up and down steps.

DiVincenzo testified that after one day of duty, he experienced further back pain while manually closing a firehouse door. He returned to the clinic and reported that he was unable to do the "limited duty" assigned to him. He requested a different and less physically exacting assignment, but was placed on sick leave once again. In June 1983, DiVincenzo's sick leave ran

out, and he was placed on leave without pay, a status in which he remained until the Board's decision in this case. During a part of this period, DiVincenzo worked as a courier and drove a truck for that purpose.

Firefighter DiVincenzo was examined from time to time by several physicians while he was on leave without pay. In 1990, Dr. Norman Horowitz reported that DiVincenzo suffered from "a 40% restriction of forward bending, with tenderness in the sacroiliac region." Dr. Horowitz directed that an MRI[1] examination be performed, and DiVincenzo was found to be suffering, among other things, from a small left central disc herniation, as well as mild degenerative arthritic changes. Further tests revealed substantial deficits in DiVincenzo's left and right quadriceps muscles and in his left and right hamstring muscles.

On February 1, 1991, the Board of Police and Fire Surgeons considered DiVincenzo's case (BPFS). BPFS found that DiVincenzo was suffering from lumbar disc disease and recommended that he be retired on disability. The BPFS recommendation was communicated to the Relief Board, which held an evidentiary hearing. The Relief Board heard the testimony of Dr. Lucio Villareal, one of the BPFS physicians, and of Firefighter DiVincenzo. The Relief Board also considered DiVincenzo's medical records.

Dr. Villareal was questioned by a member of the Relief Board as to the reason for the BPFS recommendation that DiVincenzo be retired on disability rather than placed on limited duty, as several physicians had previously suggested. Dr. Villareal responded that disability retirement was an

administrative alternative in that every time we try to put him back, he would say that he couldn't do it because he was in too much pain.

By a vote of 4:3, the Relief Board denied DiVincenzo's application for retirement. After considering the medical evidence, the Board concluded that DiVincenzo "suffered from a *non-disabling* lumbar disc disease...." (Emphasis in original). The Board further gave

credence to the Board of Surgeons' representative, Dr. Villareal, who opined that [DiVincenzo] can, in fact perform, but instead has refused to perform, limited duty stating that he is experiencing pain. Additionally virtually all of [the medical] reports through 1983, before [DiVincenzo] was placed on indefinite leave without pay, indicated that [his] degenerative lumbar changes were within the normal limits for a person of his age and that [the physician] saw no objective findings that would account for [DiVincenzo's] intensive subjective complaints and further that [DiVincenzo] could in fact, *perform sedentary activities.*

It is clear that [DiVincenzo's] argument for disability hinged upon the MRI Report of July 2, 1990.... However, the Board finds that due to the disparity in the time between [DiVincenzo's] last injury, which occurred in June of 1982 and the MRI, which was done on July 2, 1990, and, inasmuch as [DiVincenzo] has been self-employed for the last several years as a sometimes "biking" courier, that [DiVincenzo] is not permanently disabled. The Board is therefore persuaded and concludes that [DiVincenzo] can indeed perform useful and efficient service for the D.C., Fire Department pursuant to sections 4–607(2), 4–615 and 4–616, D.C.Code (1981).

(Emphasis added).

The essence of the Relief Board's decision was that DiVincenzo was partially, not totally, disabled, and that he was able to perform limited (and sedentary) duties. The Relief Board made no findings, however, with respect to the nature of the "limited" duties which were offered to Firefighter DiVincenzo, as to whether the activities expected of him were in fact sedentary, or

---

1. Magnetic resonance imaging.

as to his ability or lack thereof to perform them.

## II.

The relevant statutory sections provide, in pertinent part,

whenever any member is injured or contracts a disease in the performance of duty or such injury or disease is aggravated by such duty ... and such injury or disease or aggravation permanently disables him for the performance of duty, he shall upon retirement for such disability, receive an annuity ...

D.C.Code § 4–616(a) (1988).

The terms "disabled" or "disability" mean disabled for useful and efficient service in the grade or class of position last occupied by the member by reason of disease or injury.

*Id.* § 4–607(2).

■ In *Holderbaum v. Police & Firefighters Retirement and Relief Bd.*, 579 A.2d 213 (D.C.1990), this court explained the application of these provisions to cases of this kind:

To receive disability retirement, an officer must show: (1) a disability, incurred in the performance of duty, (2) from useful and efficient service (3) in the grade or class of position last occupied. *Szego v. Police & Firefighters Retirement & Relief Bd.*, 528 A.2d 1233, 1235 (D.C. 1987); D.C.Code §§ 4–607(2), –616. Implicit in these requirements is a fourth: capacity to perform the work assigned given the nature of the injury or disability.

*Id.* at 215. In essence, the petitioner is entitled to disability retirement if he proves that he is permanently disabled from the performance of duty (§ 4–616(a)), or, alternatively, if he is partially disabled and has not been provided a position in which he can actually perform useful and efficient service in spite of his partial disability. *Martin v. Police and Firefighters Retire-*

*ment and Relief Bd.*, 532 A.2d 102, 106 (D.C.1987). It is not sufficient, under the statute as construed in *Martin*, for the agency to assign a partially disabled firefighter a nominal position in which he has little or nothing to do. *See Martin, supra*, 532 A.2d at 107. The Board must consider, by reference to record evidence, whether the petitioner is actually performing (or is being accorded a realistic opportunity to perform) useful and efficient service justifying a full time salary. *Id.*

The "useful and efficient service" need not be the petitioner's old job. In *Seabolt v. Police & Firemens' Retirement & Relief Bd.*, 413 A.2d 908, 910–911 (D.C.1980), this court rejected the contention that "disabled for service in the grade or position last occupied" mandates retirement where the petitioner is unable to perform his old duties. Instead, the court held that "useful and efficient service" broadly encompasses any job available to officers of the same rank and salary. *Accord, Martin, supra*, 532 A.2d at 106, citing *Seabolt*, 413 A.2d at 910–12.

In *Wells v. Police & Firefighters' Retirement & Relief Bd.*, 459 A.2d 136, 139 (D.C. 1983) (en banc), this court held that the petitioner "bears the burden of showing that there is no job available which he can perform in the grade or class of position he last occupied." Since it is difficult to prove a negative, however, a petitioner may meet this burden by showing that the department failed to place him and keep him employed in such a job. *Holderbaum, supra*, 579 A.2d at 216. Thus, where a petitioner who is contesting a denial of disability retirement "come[s] forward with evidence that the duties assigned him are not useful or efficient service, ... the burden shifts to the department to adduce evidence to the contrary." *Id.*

## III.

■ With these principles in mind, we address DiVincenzo's challenge to the ade-

quacy of the Relief Board's findings. Under the District of Columbia Administrative Procedure Act (DCAPA), D.C.Code § 1–1501 *et seq.* (1990), the scope of our review is limited. It is not the function of the reviewing court to superimpose its own opinion over the findings of the agency. *Holderbaum, supra,* 579 A.2d at 215. Rather, our obligation is to determine whether the Relief Board's decision is "supported by and in accordance with the reliable, probative and substantial evidence." D.C.Code § 1–1509(e) (1992).

■ The court does not, however, operate as a rubber stamp. As we explained in *Allen v. Police & Firefighters' Retirement and Relief Bd.,* 528 A.2d 1225, 1229 (D.C. 1987), the DCAPA requires us to determine

whether the Board failed to (1) state findings of fact on each material, contested factual issue, (2) base such findings on substantial evidence, or (3) draw conclusions of law which follow rationally from the findings.... Substantial evidence in this context is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. (Citation omitted).

Moreover, the agency's obligation to make findings of fact with respect to each contested factual issue is not satisfied by the rote recitation of language from statutes or precedents; rather, the agency must "make a meaningful attempt to come to grips with the difficult factual issues raised by this record." *Eilers v. District of Columbia Bureau of Motor Vehicles Servs.,* 583 A.2d 677, 685 (D.C.1990).

■ In the present case, it is undisputed, and the Relief Board effectively found, that DiVincenzo was partially disabled.[2]

Accordingly, the critical question before the Board was whether he was accorded an opportunity to work in a position in which he could perform "useful and efficient service." So far as we can discern from this record, the only position which the agency claims to have offered to DiVincenzo at which he was supposed to have been able to provide such service was that of guard at a fire station in March, 1983.[3]

The Relief Board's decision, however, contains no findings with respect to this position[4] or any other light duty position which may have been offered to DiVincenzo. DiVincenzo described the "guard" job as requiring him to work as much as sixteen hours a day and to walk up and down a spiral staircase. The Relief Board found that DiVincenzo was able to engage in sedentary activities, but the job as described by DiVincenzo can hardly be characterized as sedentary. No contrary testimony was adduced as to the nature of DiVincenzo's proposed duties.

Although the Relief Board's decision reflects a belief on the part of the Board's majority that DiVincenzo may have been malingering or exaggerating his symptoms, the Board never meaningfully came to grips with the decisive question presented to it. Specifically, the Board did not identify the obligations which DiVincenzo was expected to perform on the job, nor did it address his capacity to carry out these obligations in the light of the injuries to his back.

We are therefore compelled to conclude that the Relief Board has failed "to state findings of fact on each material contested factual issue," *Allen, supra,* 528 A.2d at 1229, and that the Board has made no "meaningful attempt to come to grips with

2. Although DiVincenzo initially claimed that he was totally disabled, he has explicitly abandoned that contention in this court.

3. DiVincenzo was, however, provided other limited duty *after* the Relief Board's decision. See note 5, *infra.*

4. At page 3 of its decision, the Relief Board stated that "on March 10, 1983, while performing limited duty, specifically, while closing doors, [DiVincenzo] again reported experiencing sudden back pain." There is no other discussion of the issue in the Board's findings of fact or conclusions of law.

[at least some of] the difficult factual issues raised by this record." *Eilers, supra,* 583 A.2d at 685. Accordingly, we vacate the decision of the Relief Board and remand the case for further proceedings consistent with this opinion.

*So ordered.*[5]

---

**5.** In connection with the proceedings on remand, we note certain specific issues which are among those which the Board should address:

1. DiVincenzo testified that when he returned to the clinic, apparently following his unsuccessful day of limited duty at the fire station, he was told that "you are going to have an uphill battle. *We don't have any limited duty* and the Fire Department does not recognize something." (Emphasis added). The Board should determine whether this conversation took place and, if so, whether it is probative as to the availability of "useful and efficient service."

2. DiVincenzo claims that in 1991, after the Board's decision, he was assigned to "limited duty" which consisted of no more than one hour's work a day, answering an occasional telephone call and doing some filing. He maintains that he is being paid $38,587.00 per year for doing very little. The Relief Board should reopen the record to determine whether these allegations are accurate and, if so, whether the nature of DiVincenzo's duties since the Relief Board's order supports his contentions regarding the availability or lack thereof of meaningful work for him to do.