DISTRICT OF COLUMBIA METRO-POLITAN POLICE DEPART-MENT, Appellant,

v.

Elton L. PINKARD, Appellee.

No. 99–CV–1210.

District of Columbia Court of Appeals.

Argued Nov. 7, 2000.
Decided June 20, 2002.

---

Sheila Kaplan, Assistant Corporation Counsel, with whom Robert R. Rigsby,

Corporation Counsel, and Charles L. Reischel, Deputy Corporation Counsel, were on the brief, for appellant.

Marion E. Baurley, Washington, DC, for appellee.

Before TERRY, REID, and WASHINGTON, Associate Judges.

TERRY, Associate Judge:

The Metropolitan Police Department (MPD) appeals from a Superior Court order affirming a ruling by the Office of Employee Appeals (OEA) that the MPD did not have cause to fire one of its officers, Elton Pinkard. An MPD trial board, after a hearing, terminated Pinkard on the ground that he had assaulted his former wife. When Pinkard appealed from his termination to the OEA, an OEA administrative judge reversed the trial board's decision and ordered that Pinkard be reinstated. That ruling was upheld by the OEA in an administrative appeal. The MPD then sought review in the Superior Court, but that court affirmed the decision of the OEA.

On this appeal from the Superior Court, the MPD contends (1) that an evidentiary hearing before the OEA administrative judge was precluded by a collective bargaining agreement between the MPD and the Fraternal Order of Police, a labor union to which Pinkard belongs, (2) that the OEA administrative judge abused her discretion in ordering a second evidentiary hearing, and (3) that there was not substantial evidence to support the OEA's findings. Because we agree that the collective bargaining agreement precluded any further fact-finding, we reverse the trial court's decision and remand the case to the OEA for further proceedings.[1]

1. In *Metropolitan Police Dep't v. Baker,* 564 A.2d 1155 (D.C.1989), this court reversed a decision by the OEA to reinstate a police officer because the OEA's decision was not

## I

This case originated in an altercation between Pinkard and his former wife, Victoria Richardson, at her home in Maryland. Ms. Richardson testified before the trial board that on January 19, 1987, Pinkard struck her in the mouth during an argument. After learning of this incident and the ensuing criminal prosecution, the MPD issued a notice of proposed adverse action, charging Pinkard with misconduct for (1) conduct unbecoming an officer and (2) conviction of a criminal offense.[2] Pinkard requested an evidentiary hearing before a trial board.

At that hearing Richardson testified that Pinkard was late in returning their children to her home, contrary to the visitation arrangement on which they had agreed. An argument ensued, during which Pinkard struck Richardson on the chin with his fist. Pinkard denied punching Richardson, stating that she pushed him first and that he pushed her back, inadvertently causing her injury.

Two other persons who were in the house at the time of the incident also testified. Frazier Ford, a carpenter who was doing some work in Ms. Richardson's basement, testified that he heard a bump, and then the front door slammed. When he ran up the stairs, he saw Ms. Richardson kneeling down, holding her mouth and crying. Fannie Bears, Ms. Richardson's sister, testified that she was upstairs when she heard a scream. She came down the stairs and saw Mr. Ford helping her sister to her feet. On cross-examination, Bears testified that Richardson had told her that she shoved Pinkard.

The trial board found that Richardson's injury was the result of a physical altercation between Pinkard and Richardson, that the injury did not appear to have been caused by a fall, and that although Richardson might have initiated some physical contact when trying to get Pinkard to leave her house, there was no evidence that her conduct was hostile or assaultive. It also found that Pinkard had been convicted of battery in the criminal proceeding that resulted from the incident. The trial board concluded that Pinkard was guilty of both charges of misconduct and recommended that his employment be terminated.

Pinkard appealed from the trial board decision to the OEA. At a status hearing before the administrative judge, the parties agreed that there would be no further fact-finding in the appeal. The MPD filed a motion requesting that the appeal be restricted to the existing record because the collective bargaining agreement (CBA) between the MPD and the Fraternal Order of Police required appeals to the OEA to be decided solely on the record established before the trial board. The administrative judge ruled that the parties to the

---

supported by substantial evidence. The MPD argues that we should follow *Baker* and hold that the OEA's decision in this case was similarly unsupported by substantial evidence. While that may or may not be true, a matter on which we express no view, we choose under the circumstances to remand the case to the OEA for further proceedings. *See Gunty v. Department of Employment Services*, 524 A.2d 1192, 1197 (D.C.1987); *Stokes v. District of Columbia*, 502 A.2d 1006, 1010 (D.C.1985); *Dell v. District of Columbia Dep't of Employ-*

*ment Services*, 499 A.2d 102, 105–106 (D.C. 1985).

**2.** As a result of the altercation, Ms. Richardson filed an assault complaint in the District Court of Prince George's County, Maryland. Pinkard initially pleaded guilty and was convicted of the assault. Under Maryland Rules, however, Pinkard was able to appeal his assault conviction and receive a *de novo* hearing. *See* Md. Rule 7–102(b). On appeal, Pinkard withdrew his guilty plea and entered a plea of *nolo contendere*.

CBA had no authority to preclude the OEA from conducting an evidentiary hearing,[3] but since neither party sought a new hearing, she agreed to render a decision based on the existing record.

After reviewing the record, the administrative judge reversed the trial board's decision. She held that Pinkard could not be found to have committed a crime because his plea of *nolo contendere* to the assault charge was not an admission of guilt under Maryland law.[4] She also found that she was unable to evaluate the credibility of the witnesses because the case was decided solely on the record, and, in light of the conflicting testimony, the MPD had failed to establish by a preponderance of the evidence that Officer Pinkard had struck Ms. Richardson in the face.

The MPD filed an administrative appeal within the OEA. In its petition the MPD noted the administrative judge's decision that the CBA could not limit her discretion to hold hearings, and argued, on the basis of that decision, that the administrative judge should have held a credibility hearing.

The OEA ruled, *inter alia*, that "[b]y regulation, the decision as to whether to hold a hearing is a matter within the discretion of the presiding official." It concluded that although the administrative judge was not required to hold a hearing, she erred by refusing to resolve issues of credibility simply because the case was decided on the existing record.[5] The OEA emphasized that if the demeanor of the witnesses was crucial to making a credibility determination, then the administrative judge should have conducted a hearing in order to develop the record fully. Accordingly, on September 30, 1993, the OEA granted the MPD's petition and remanded the case to the administrative judge for a credibility determination.

On November 18, 1993, nearly seven years after the altercation, Pinkard and Richardson testified again at the remand hearing. No other witnesses testified. After reviewing the entire record, and relying on her "observations of the demeanor of the witnesses," the administrative judge ruled that the MPD had failed to demonstrate by a preponderance of the evidence that Pinkard had engaged in the conduct charged. On February 16, 1995, the administrative judge issued a decision ordering that Pinkard be reinstated with full pay and benefits, retroactive to the date of his discharge in 1987.

---

3. The administrative judge found the rationale of *Rustin v. District of Columbia Fire Dep't*, OEA Docket No. 1601–0057–91 (June 1992), to be "persuasive and applicable." The same argument regarding the preclusive effect of a CBA was raised in *Rustin* and was found by the OEA to be without merit. In *Rustin* the OEA held that former D.C.Code § 1–617.3(d) (repealed 1998), which permitted a CBA to foreclose a member-employee's right to appeal an adverse action to the OEA, did not limit the OEA itself in the exercise of its authority to conduct further hearings, even though such hearings were precluded by the CBA. *But see Hahn v. University of the District of Columbia*, 789 A.2d 1252, 1257–1258 (D.C.2002) (CBA superseded regulations governing faculty tenure to the extent that they were inconsistent).

4. *See McCall v. State*, 9 Md.App. 191, 263 A.2d 19 (1970).

5. The OEA stated that when a credibility determination cannot be based on demeanor because the case is decided on the record, then the administrative judge should resolve credibility issues by relying on other factors, including (1) the witness' opportunity and capacity to observe the event or act in question; (2) the witness' character; (3) any prior inconsistent statement by the witness; (4) the witness' bias or lack of bias; (5) any contradiction of the witness' version of events by other evidence or its consistency with other evidence; and (6) the inherent improbability of the witness' version of the events.

The MPD filed a second administrative appeal, arguing that the administrative judge's decision was not supported by substantial evidence. On August 25, 1998, the OEA issued an order affirming that decision, deferring to the administrative judge's credibility determination and holding that the record contained substantial evidence supporting her conclusion.

The MPD then filed a petition for review in the Superior Court, contending (1) that the OEA was bound by the collective bargaining agreement to base its decision on the record established before the trial board and therefore erred by requiring the administrative judge to hold a credibility hearing, and (2) that the OEA decision was unsupported by substantial evidence. The court denied the petition, holding that the OEA was authorized to conduct its own evidentiary hearing and that the administrative judge's findings were supported by substantial evidence. From that ruling the MPD brings this appeal.

## II

■ The MPD contends that the evidentiary hearing before the administrative judge was improper because (1) the collective bargaining agreement between the MPD and the Fraternal Order of Police, when read in conjunction with the Comprehensive Merit Personnel Act (CMPA), D.C.Code §§ 1–606.1 et seq. (1999),[6] pre-

cluded such a hearing,[7] and (2) even if the evidentiary hearing was not legally barred by the collective bargaining agreement, the administrative judge abused her discretion when she decided to hold a new hearing after there had been a full evidentiary hearing before the trial board. The MPD further maintains that, even if the second evidentiary hearing was lawfully held, there was not substantial evidence to support the OEA's final determination that Pinkard should be reinstated. Pinkard contends that the collective bargaining agreement cannot limit the OEA's authority under the CMPA to determine whether a second evidentiary hearing was necessary or permissible. We agree with the MPD that the collective bargaining agreement between Pinkard's union and the MPD barred a second evidentiary hearing. We therefore remand this case to the OEA without reaching the MPD's remaining contentions.

■ As a general rule, this court owes deference to an agency's interpretation of the statute under which it acts. See, e.g., Hutchinson v. District of Columbia Office of Employee Appeals, 710 A.2d 227, 234 (D.C.1998) (citing cases). There is, however, an exception to this general rule, which is that we will not defer to an agency's interpretation if it is inconsistent with the plain language of the statute itself. See, e.g., Columbia Realty Venture v. District of Columbia Rental Housing Comm'n, 590

---

6. In the 2001 recodification of the District of Columbia Code, several sections of the CMPA were renumbered. Before that, the CPMA was extensively amended by the Omnibus Personnel Reform Amendment Act of 1998, D.C. Law 12–124, 45 D.C. Register 2464 (1998). The provisions of the CMPA in the 2001 Code are essentially identical to the provisions relied upon by the parties in their briefs. See D.C.Code §§ 1–606.2, 1–606.3, and 1–617.52(d) (1999), recodified as D.C.Code §§ 1–606.02, 1–606.03, and 1–616.52(d) (2001).

7. Pinkard contends that the MPD should not be allowed to argue that the CBA barred the hearing because the issue was never raised in the Superior Court. That is incorrect. Although the court did not specifically address the issue of the CBA's preclusive effect in denying the petition, the MPD did raise the issue in its brief in that court. Because the argument was made to the trial court, even if not decided, it was properly preserved for appellate review. See Hessey v. Burden, 615 A.2d 562, 581 n. 28 (D.C.1992).

A.2d 1043, 1046 (D.C.1991) (citing cases). This case falls within the exception because the OEA's reading of the CMPA is contrary to its plain language and cannot be reconciled with it. We therefore hold that, under the statute, the collective bargaining agreement controls and supersedes otherwise applicable OEA procedures, and consequently, that the OEA administrative judge erred in conducting a second hearing.

The OEA generally has jurisdiction over employee appeals from final agency decisions involving adverse actions under the CMPA. The statute gives the OEA broad discretion to decide its own procedures for handling such appeals and to conduct evidentiary hearings. *See* D.C.Code §§ 1-606.2(a)(2), 1-606.3(a), (c); 1-606.4 (1999), recodified as D.C.Code §§ 1-606.02(a)(2), 1-606.03(a), (c), 1-606.04 (2001); *see also* 6 DCMR § 625 (1999).

The MPD contends, however, that this seemingly broad power of the OEA to establish its own appellate procedures is limited by the collective bargaining agreement in effect at the time of Pinkard's appeal. The relevant portion of the collective bargaining agreement reads as follows:

> [An] employee may appeal his adverse action to the Office of Employee Appeals. In cases where a Departmental hearing has been held, *any further appeal shall be based solely on the record established in the Departmental hearing.* [Emphasis added.]

Pinkard maintains that this provision in the collective bargaining agreement, which appears to bar any further evidentiary hearings, is effectively nullified by the provisions in the CMPA which grant the OEA broad power to determine its own appellate procedures. A collective bargaining agreement, Pinkard asserts, cannot strip the OEA of its statutorily conferred powers. His argument is essentially a restatement of the administrative judge's conclusions with respect to this issue.

It is of course correct that a collective bargaining agreement, standing alone, cannot dictate OEA procedure. But in this instance the collective bargaining agreement does not stand alone. The CMPA itself explicitly provides that systems for review of adverse actions set forth in a collective bargaining agreement must take precedence over standard OEA procedures. D.C.Code § 1-606.2(b) (1999) (now § 1-606.02(b) (2001)) states that "[a]ny performance rating, grievance, adverse action, or reduction-in-force review, which has been included within a collective bargaining agreement . . . *shall not be subject to the provisions of this subchapter*" (emphasis added). The subchapter to which this language refers, subchapter VI, contains the statutory provisions governing appellate proceedings before the OEA. *See* D.C.Code § 1-606.3 (1999) (now § 1-606.03 (2001)). Since section 1-606.2(b) specifically provides that a collective bargaining agreement must take precedence over the provisions of subchapter VI, we hold that the procedure outlined in the collective bargaining agreement—namely, that any appeal to the OEA "shall be based solely on the record established in the [trial board] hearing"—controls in Pinkard's case.

 The OEA may not substitute its judgment for that of an agency. *See Dell,* 499 A.2d at 105–106. Its review of an agency decision—in this case, the decision of the trial board in the MPD's favor—is limited to a determination of whether it was supported by substantial evidence, whether there was harmful procedural error, or whether it was in accordance with law or applicable regulations. *See Stokes,* 502 A.2d at 1010; D.C.Code § 2–510(a)(3) (2001). The OEA, as a reviewing authori-

ty, also must generally defer to the agency's credibility determinations. *See Gunty,* 524 A.2d at 1197; *Dell,* 499 A.2d at 108. Mindful of these principles, we remand this case to the OEA to review once again the MPD's decision to terminate Pinkard, and we instruct the OEA, as the collective bargaining agreement requires, to limit its review to the record made before the trial board.

The decision of the Superior Court is reversed. This case is remanded to the OEA for further proceedings, limited to whether the trial board decision was supported by substantial evidence or was otherwise contrary to law.

*Reversed and remanded.*