Francis M. DAVIDSON, Appellant,

v.

**OFFICE OF EMPLOYEE APPEALS, Appellee,**

**District of Columbia Fire & Emergency Medical Services Department, Intervenor.**

No. 04–CV–913.

District of Columbia Court of Appeals.

Argued Oct. 13, 2005.

Decided Oct. 27, 2005.

Jason C. Crump, Washington, DC, for appellant.

Mary L. Wilson, Assistant Attorney General, with whom Robert J. Spagnoletti, Attorney General of the District of Columbia, and Edward E. Schwab, Deputy Attorney General, were on the brief, for appellee.

Before SCHWELB, REID and GLICKMAN, Associate Judges.

PER CURIAM:

On November 20, 2002, the Office of Employee Appeals (OEA) affirmed an earlier decision of a Trial Board discharging Francis M. Davidson from the District of Columbia Fire and Emergency Services Department for insubordination. Davidson appealed to the Superior Court, and on June 10, 2004, in a concise and well-reasoned written order, the trial judge (Weisberg, J.) affirmed the decision of the OEA. A copy of the trial judge's order is attached hereto and made a part hereof. Davidson filed a timely appeal to this court.

"At the outset, we note that this court must conduct 'the identical review [of the OEA's decision] that we would undertake if this appeal had been heard initially in this court." ' *Davis v. Univ. of the District of Columbia*, 603 A.2d 849, 851 (D.C. 1992) (citations omitted). We agree with the trial judge's disposition of each of the issues raised. Accordingly, for the reasons stated in the trial judge's order, the judgment appealed from is

*Affirmed.*[1]

## APPENDIX

### SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

### CIVIL DIVISION

FRANCES DAVIDSON, Petitioner,

v.

OFFICE OF EMPLOYEE APPEALS, Respondent,

and

DISTRICT OF COLUMBIA FIRE AND EMERGENCY MEDICAL SERVICES DEPARTMENT, Intervenor.

03-MP-~~10~~ 3 Calendar 14

### *ORDER*

This matter is before the court on the Petition of Frances M. Davidson for review of the decision of the Office of Employee Appeals ("OEA"), issued on November 20, 2002, which affirmed the earlier decision of a Trial Board discharging Petitioner from the District of Columbia Fire and Emergency Services Department ("Fire Department") for insubordination. Petitioner challenges the OEA decision in the ground that it was infected by procedural error, that it was not supported by substantial evidence in the record and that it was otherwise arbitrary and erroneous as a matter of law.

 Pursuant to the Superior Court Agency Review Rule 1, the court has jurisdiction to review a final decision of an

---

1. We have considered all of Davidson's other contentions and conclude that they are without merit. To the extent that Davidson raised issues and authorities during oral argument which were not included in his brief, counsel for the OEA had no opportunity to respond to them, and they are not properly before us. *In re Shearin*, 764 A.2d 774, 778 (D.C. 2000).

agency of the District of Columbia. The court cannot "set aside the action of the agency if supported by substantial evidence in the record as a whole and not clearly erroneous as a matter of law." Super. Ct. Agency Rev. R. 1(g). "Substantial evidence is 'relevant evidence such as a reasonable mind might accept as adequate to support a conclusion.'" *Mills v. District of Columbia Dep't of Empl. Servs.,* 838 A.2d 325, 328 (D.C.2003) (quoting *Black v. District of Columbia Dep't of Employment Servs.,* 801 A.2d 983, 985 (D.C.2002)). As long as agency decisions are supported by substantial evidence in the record, they must be affirmed "notwithstanding that there may be contrary evidence in the record (as there usually is)." *Ferreira v. District of Columbia Dep't of Employment Servs.,* 667 A.2d 310, 312 (D.C.1995). "It is not the function of the reviewing court to superimpose its own opinion over the findings of the agency," but only to determine whether the agency's decision is supported by substantial evidence. *DiVincenzo v. District of Columbia Police & Firefighters Retirement and Relief Bd.,* 620 A.2d 868, 871 (D.C. 1993).

■ Petitioner argues that he was improperly denied an evidentiary hearing *de novo* at the OEA. The OEA denied Petitioner an evidentiary hearing based on the decision. in *Metropolitan Police Dep't v. Pinkard,* 801 A.2d 86 (D.C.2002). *Pinkard* holds that, pursuant to the Comprehensive Merit Personnel Act, D.C.Code § 1–606.02(b) (2001), a provision in a collective bargaining agreement setting forth procedures for review of adverse personnel actions takes precedence over any conflicting procedures of the OEA. The collective bargaining agreement in this case, as in *Pinkard,* contains a provision that employee appeals of adverse personnel actions to the OEA are decided on the administrative record, and the employee is not entitled to a *de novo* evidentiary hearing. Petitioner contends that he was exempt from the holding in *Pinkard* because he was not a dues paying member of the union during the relevant time period and therefore that the administrative review provisions in the collective bargaining agreement between the Fire Department and the union did not apply to him. The OEA administrative law judge held that Petitioner had not met his burden of establishing that *Pinkard* did not apply to him. Assuming that Petitioner was not a member of the union during the relevant time period,[1] it does not follow that the collective bargaining agreement, and therefore the decision in *Pinkard,* does not apply to him. As the brief on behalf of the Intervenor points out, the union bargains for all employees of the Department, whether an employee is a dues-paying member of the union or not, and in that sense the collective bargaining agreement binds all employees in the bargaining unit. The collective bargaining agreement incorporates a Memorandum of Understanding between the Fire Department and the union, bargaining for *all* employees—members and nonmembers alike—which provides:

> The affected member may appeal the Fire Chief's decision [on Personnel actions] only to the District of Columbia Office of Employee Appeals. Such appeal shall be based solely on the record established in the Trial Board hearing.

1. Petitioner contends that he could have established his non-union status through the testimony of Raymond Snead, but the administrative law judge ignored his request to subpoena Mr. Snead to provide that testimony. For the purposes of this ruling, the court is assuming Petitioner was not a member of the union.

It is apparent from the context of the entire Memorandum of Understanding that he term "affected member" refers to a uniformed "member" of the Fire Department, and not to a member of the union. Thus, the administrative law judge appears to have been entirely correct in denying Petitioner a *de novo* evidentiary hearing on the authority of *Pinkard*.

Be that as it may, Petitioner's argument that *Pinkard* does not apply to him fails for another reason. On September 10, 2002, Petitioner submitted to the OEA administrative law judge a *pro se* pleading arguing that *Pinkard* did not apply to him because he was not a member of the union. Thereafter, on October 16, 2002, the judge ordered Petitioner to submit a brief by October 25, 2002, with legal arguments and authorities in support of his legal position, specifically advising Petitioner that his previous submission was insufficient because "even if he is not a union member as he alleges, he may still be covered by the union's collective bargaining agreement." In response, Petitioner submitted nothing on the *Pinkard* issue. Accordingly, in his initial decision, the judge concluded that having not submitted any pertinent authorities in support of his position, Petitioner had not met his burden of establishing his entitlement to an evidentiary hearing and had, in effect, waived any contention that *Pinkard* was not controlling authority on the issue. The judge's decision on this issue was not an abuse of discretion or clearly erroneous as a matter of law. For that additional reason, the decision of the OEA to deny Petitioner a *de novo* evidentiary hearing must be affirmed.

Petitioner also argues that the Fire Department could not charge him with insubordination based on non-compliance with the Department's substance abuse policy because that policy should never have been imposed on him in the first place. The Department's Substance Abuse Policy allows for urine surveillance of members under three circumstances, none of which applied to Petitioner. However, the same policy provides that a member who *admits* to substance abuse will be tested and, if positive, will be required to participate in the mandatory rehabilitation program. The administrative record is replete with admissions by Petitioner to his doctors and others that he was dependent on the codeine in Tylenol # 3 and in the past had supplemented his prescribed medication with drugs obtained illegally "off the street." Given Petitioner's admission, the Fire Department's order that Petitioner participate in the mandatory drug rehabilitation program after he tested positive did not violate the Department's own policy, much less the Comprehensive Merit Personnel Act, as Petitioner contends, and the OEA affirmance of the Trial Board's decision is not legally vulnerable on that ground.

Petitioner's remaining arguments are without substantial merit and can be dealt with summarily. If, after considerable vacillation, Petitioner did not actually waive his right to call Chief Ryan as a witness at the Trial Board—and there is evidence in the record to support a finding that he did—he has not proffered any testimony Chief Ryan might have given that would have changed the outcome. Even if Chief Ryan was wrong to order Petitioner back on light duty status, that would not excuse Petitioner's violation of the mandatory drug program by increasing levels of codeine in his system while participating in the program. Similarly, even if additional portions of his voluminous medical records should have been produced, Petitioner has not shown, or even suggested, how any missing record could have helped his case.

It is not disputed that the Fire Department, through the clinic, prescribed potentially addictive Tylenol # 3 for Petitioner for many years. It is not disputed that the clinic prescribed Tylenol # 3 for Petitioner on May 27, 1997. Petitioner can point to no evidence that the clinic prescribed Tylenol # 3 for him after that date. Even if, as Petitioner asserted in his pleadings below, he still had a stash of Tylenol # 3 tablets from previous prescriptions, and even if he was at that time still dependent on codeine, the requirements of the Department's mandatory program were what they were, and Petitioner violated them. Missing medical records, assuming some were missing, would not change that fact.[2]

Underlying all of Petitioner's arguments is a theme that it was unfair for the Fire Department to "enable" an injured member with addictive medications for some ten years, and then remove him for insubordination, without providing *adequate* treatment, when he could not conquer his addiction within a few months. The court is not unsympathetic to this cry of foul. In retrospect, the Department probably should have started to wean Petitioner off drugs long before 1997, and in a perfect world, the Department would have produced treatment programs that could have successfully treated, simultaneously, Petitioner's back as well as his addiction. But it is clear from the record that Petitioner refused to submit to the treatment that was offered and failed to reduce the levels of codeine in his system in violation of Department policy. The fact that the Department may have made mistakes along the way in dealing with Petitioner's disabilities does not warrant reversal of the OEA decision based on this record. As for Petitioner's claim that his removal violated his rights under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12112, Petitioner's use of schedule II controlled substances after, and in addition to, the last prescription he received on May 27, 1997, is expressly prohibited by law and excluded from coverage under the ADA, even assuming the OEA had jurisdiction to consider the claim, which it did not.

Putting aside, then, petitioner's arguments for reversal based on asserted procedural and substantive errors below, the only remaining question is whether the decision of the OEA is supported by substantial evidence in the record as a whole. The administrative law judge found, based on the record of the Trial Board, that "all of the evidence pointed to Employee's guilt on the Agency's charges against him." That evidence consisted of the testimony of the Agency's witnesses and Petitioner's evidence, including his own testimony. Petitioner may have felt, and presumably still feels, that it was wrong of the Fire Department to discharge him, but he freely admitted in his testimony the very violation on which the discharge was based. Unquestionably, there is substantial evidence in the record to support the decision of the OEA affirming the Trial Board.

For all the foregoing reasons, it is this 10th day of June 2004

ORDERED that the decision of the Office of Employee Appeals be, and it hereby is, affirmed.

/s/ Frederick H. Weisberg
JUDGE FREDERICK H. WEISBERG

---

**2.** Petitioner's contention in his brief that he was not advised of his supposed "right" to submit evidence after the Trial Board's recommended decision is probably wrong as a matter of law, as Intervenor points out in its brief, but, in any event, was not raised below and will not be considered for the first time on review here.

Copies to:

Jason C. Crump 1230 H. Street, N.W. Suite 100 Washington, D.C.

Kevin Turner Assistant Attorney General Office of the Attorney General Personnel and Labor Relations Section 441 Fourth Street, N.W., Suite 1060 North Washington, D.C.

Sheila Barfield Acting General Counsel Office of Employee Appeals 717 14th Street, N.W., 3rd Floor Washington, D.C. 20005